OPINION OF THE COURT
Hancock, Jr., J.
Under ECL 3-0305 (1), the Commissioner of the Department of Environmental Conservation (DEC) is empowered to "acquire any real property which he deems necessary for any of the purposes or functions of the department, by purchase or as provided in the eminent domain procedure law” (emphasis added). With regard to acquisitions for purposes of fish and wildlife management, such as providing the public fishing access involved here, the Commissioner has specific authority under ECL 11-2103 (1) to "acquire [lands] by lease, purchase, gift, devise, agreement or otherwise” (emphasis added). The narrow question presented is whether the absence of explicit reference to eminent domain power in ECL 11-2103 precludes the exercise of that power, granted generally to the Commissioner in ECL 3-0305, to condemn land for a public fishing *437 purpose.[1] We are persuaded by the plain language of ECL 3-0305 (1) and the pertinent legislative history that it does not.
Pursuant to its responsibility to manage the State’s fish and wildlife resources (see generally, ECL arts 11, 13), DEC proposed a "low-key fishing access site” on the southside of Keuka Lake. The facility, consisting of a boat-launching ramp and adjacent parking lot, was to be located in the Village of Hammondsport on 3.2 acres currently owned by Bath and Hammondsport Railroad Company. Following protracted environmental and historical impact studies, public hearings and comment, and modifications to DEC’S plans, the Commissioner approved the proposal including the condemnation of the necessary lakeshore property.
The village and the railroad company commenced separate EDPL 207 proceedings in the Appellate Division challenging, among other things, DEC’S statutory authority to acquire the railroad company’s land by eminent domain. The Appellate Division granted the petitions and annulled DEC’s determination on the ground that, absent explicit, specific provision in ECL 11-2103, acquisitions by eminent domain were not authorized for public hunting and fishing grounds. We now reverse.
The controlling principle in the interpretation of statutes is, of course, the Legislature’s intent (see, Ferres v City of New Rochelle, 68 NY2d 446, 451; People v Ryan, 274 NY 149, 152). With regard to ECL 3-0305 (1), the correspondence between that provision’s plain language and legislative history renders its meaning and intended purpose unmistakable. The provi *438 sion literally authorizes the Commissioner to acquire "any” land for "any” departmental purpose or function through the proper condemnation procedures. Giving the statutory language its natural and obvious meaning (McKinney’s Cons Laws of NY, Book 1, Statutes § 94) and the unqualified word "any” its full significance as a general term (McKinney’s Statutes § 114; see generally, Price v Price, 69 NY2d 8, 15-16; McKinney’s Statutes §92), the conclusion is inescapable that ECL 3-0305 (1) is intended to be a general authorization to employ eminent domain within the full scope of the Department’s responsibilities. This reading of the statute is confirmed by its legislative history.
A brief review of that history demonstrates that the Legislature intended to provide the Commissioner with broad condemnation power, exercisable for each of the proper functions of the Department — including fish and wildlife management. Under current law, DEC has three major areas of responsibility: lands and forests, fish and wildlife, and water resources. Prior to 1960, the exercise of eminent domain by the former Department of Conservation was authorized only with regard to its division of lands and forests. The old Conservation Law, in its article dealing exclusively with lands and forests, contained a limited provision permitting condemnation solely for the Adirondack and Catskill parks (§ 59 [L 1916, ch 451]). The general provisions of the statute — as well as those pertaining to fish and wildlife — made no reference to any type of land acquisition. Despite various amendments and modifications to the statute over the next 33 years (see, e.g., L 1938, chs 40, 363; L 1955, ch 630), there remained only the single limited provision authorizing the exercise of eminent domain.
In 1960, the Legislature replaced that eminent domain provision with a new one (§ 13 [L 1960, ch 759]). Notably, the new provision was placed, not in the article pertaining to lands and forests but, in the one dealing with the over-all organization of the Department and the powers generally exercisable by the Commissioner.[2] The language of this new *439 provision, together with its placement in the general article of the Conservation Law, dispels any doubt that the Legislature intended to authorize the exercise of eminent domain for the various functions of the Conservation Department.* *[3] Moreover, the memoranda supporting enactment of the new provision confirm that legislative intent (see, e.g., Governor’s Approval Mem, Bill Jacket, L 1960, ch 759, 1960 NY Legis Ann, at 540 ["the bill repeals the existing limited land appropriation procedure” and "authorizes the Conservation Department to acquire the land for any conservation purpose”]; see also, to the same effect, Attorney-General’s Mem; Conservation Department Mem; Mem of Joint Legislative Committee on Natural Resources).
In 1970, the Department of Environmental Conservation was created by a merger of the former Conservation Department and the Water Resources Commission (L 1970, ch 140). Two years later, the Environmental Conservation Law was codified and the provision granting general eminent domain power was renumbered ECL 3-0305, with the former exception for water resources functions deleted (L 1972, ch 664). Finally, in 1978, ECL 3-0305 was amended to require that condemnation be exercised in accordance with the new Eminent Domain Procedure Law (L 1978, ch 727). That is the current state of the statute. Nothing in the recodification of the old Conservation Law or in the subsequent amendments to the Environmental Conservation Law has altered the purpose or effect of the general eminent domain provision originally enacted in 1960, now ECL 3-0305 — i.e., to authorize the condemnation of *440 land for the broad range of Department functions, including the establishment of fish and wildlife areas.[4]
The rule relied on by petitioners and the court below, that eminent domain statutes must be strictly construed (see, Schulman v People, 10 NY2d 249, 255-256; Society of N. Y. Hosp. v Johnson, 5 NY2d 102, 105-106), does not support a different conclusion. Whether construed strictly or otherwise, the plain language of ECL 3-0305 (1), conferring the power of eminent domain in unqualified terms, can mean only one thing — i.e., the Legislature intended a general grant of authority to the Commissioner to condemn property for "any of the purposes or functions of the department” (emphasis added).
Notwithstanding the unrestricted grant of authority in ECL 3-0305 (1), petitioners perceive a contradictory legislative intent in ECL 11-2103 (1) to preclude the use of eminent domain for acquisitions under article 11. There is nothing in ECL 11-2103 (1) which expressly limits or prohibits the use of condemnation; it merely enumerates diverse methods of voluntary acquisition which DEC may employ for fish and wildlife purposes. Petitioners, nonetheless, argue that the omission of any mention of eminent domain in that provision evinces a legislative intent to exclude condemnation from the means available to acquire fish and wildlife lands. To find this purported exclusion, petitioners go beyond the statutory language and employ two rules of construction. First, they apply "ejusdem generis” (see, McKinney’s Statutes § 239 [b]) and conclude that the Legislature specifically intended the "or otherwise” phrase in ECL 11-2103 (1) to encompass only voluntary acquisitions such as purchase and lease. Then, petitioners rely on "expressio unius est exclusio alterius” (see, McKinney’s Statutes § 240) to interpret the absence of specific mention of eminent domain in ECL 11-2103 (1) as an intentional withholding of that power from fish and wildlife management and, thus, an exception to the general grant in ECL 3-0305 (1).
*441 Such an application of the rules of construction is inappropriate here. The purpose of such rules is to assist in ascertaining legislative intent, not to defeat it (see, McKinney’s Statutes § 92 [b]; § 239, at 409; § 240, at 414). To give ECL 11-2103 (1) the interpretation urged by petitioners would be to transform the general grant of power in ECL 3-0305 (1), to condemn for the varied departmental purposes or functions, into a largely restricted one, exercisable only where particularly specified. There is simply no reason to resort to canons of construction to "discover” in ECL 11-2103 (1) a "legislative intent” directly contrary to the Legislature’s evident purpose as reflected in the language and history of ECL 3-0305 (1).
Nor are we persuaded that, because the power of eminent domain is conferred with varying limitations in certain other provisions of the present consolidated Environmental Conservation Law (see, e.g., ECL 9-0501, 15-0311, 16-0107, 45-0113 [1]), it should be concluded that the Legislature intended to preclude the Commissioner from exercising that power with respect to fish and wildlife acquisitions where it has not been specifically granted.[5] Again, the implied legislative intent on which the argument is based depends upon the rule of statutory construction "expressio unius est exclusio alterius” (see, McKinney’s Statutes § 240) which should not be used to frustrate the Legislature’s purpose in granting the unconditional general eminent domain power in ECL 3-0305 (1). The provisions of the ECL authorizing eminent domain for specific purposes are the result of the current statute’s historical evolution as an amalgamation of related enactments and are, *442 arguably, in some cases surplusage. Whether any of these provisions is inconsistent with or somehow limits the Commissioner’s general power under ECL 3-0305 (1), we need not decide. We hold only that no such limitation on that general power was intended by the omission of explicit reference to eminent domain as one of the means of acquisition specified in ECL 11-2103 (1).
Accordingly, the orders of the Appellate Division should be reversed and the matters remitted for consideration of the issues not reached by that court.

. These two sections currently provide as follows:
"Article 3 — Department of Environmental Conservation; General Functions, Powers, Duties and Jurisdiction”.
"§ 3-0305. Acquirement of real property by purchase or appropriation
"1. The commissioner when moneys therefor have been appropriated by the legislature or are otherwise available, may acquire any real property which he deems necessary for any of the purposes or functions of the department, by purchase or as provided in the eminent domain procedure law” (emphasis added).
"Article 11 — Fish and Wildlife”
"§ 11-2103. Acquisition and use of property”
"1. The department shall have power to acquire by lease, purchase, gift, devise, agreement or otherwise from any sources, lands, waters or lands and waters, or any right or interest therein for the purpose of establishing and maintaining public hunting, trapping and fishing grounds” (emphasis added).

. The new eminent domain provision (§ 13; L 1960, ch 759), provided in pertinent part:
"Acquisition of real property by purchase or appropriation
”1. Notwithstanding any other provision of this chapter or any other law, the commissioner, when moneys therefor have been appropriated by the legislature or are otherwise available, may acquire any real property which he deems necessary for any of the purposes or functions of the department, *439 other than the purposes and functions of the water resources commission provided for in article five of this chapter, by purchase or, in the manner hereinafter specified, by appropriation. Title to such real property shall be taken in the name of and be vested in the people of the state of New York; provided, however, that no real property shall be so acquired by purchase unless the title thereto shall be approved by the attorney general.” (Emphasis added.) (The remainder of section 13 detailed the procedures to be followed by the Commissioner when exercising the power of eminent domain.)

. One major exception, actually outside the jurisdiction of the Conservation Department, was explicitly noted — i.e., the purposes and functions of the Water Resources Commission, which had been created the same year (L 1960, ch 7). Although the Conservation Commissioner was its chairman, the Water Resources Commission had its own powers and responsibilities set forth in a separate statute (see, e.g., L 1960, ch 7, Conservation Law §§ 410, 423, 427).

. As evident from the supporting memoranda for the 1978 amendment, the current ECL 3-0305 (1) has two basic purposes: (1) to require DEC to follow the EDPL when appropriating real property and (2), as long as the Department does so, to continue to permit the Commissioner to acquire land by eminent domain "as he deems necessary for any of the purposes of the department” (see, Governor’s Program Mem, Bill Jacket, Senate Bill 10339, L 1978, ch 727, 1978 NY Legis Ann, at 399; see also, Department of State Mem in Support; Office of General Services Mem; Department of Transportation Mem).

. If the argument is given its logical application, it would follow that the State’s power to acquire property by eminent domain for public use of lands and forests has been largely curtailed inasmuch as several provisions of article 9 dealing with acquisition for lands and forests (see, e.g., ECL 9-0105, 9-0105 [2], [7], [7-a]; 9-0107, 9-0109) currently contain no specific grant of eminent domain power. As noted (see discussion of statutory history, supra, at 438-440, n 4), the authorization to acquire property by eminent domain, which was originally contained among the provisions dealing with lands and forests (L 1916, ch 451, Conservation Law § 59), was transferred in 1960 to that part of the statute pertaining to the over-all organization of the Department (Conservation Law § 13 [L 1960, ch 759]). The precursor of the present ECL 3-0305 (1) was thus enacted. There is nothing in the statutory history suggesting that the Legislature contemplated that, by transferring the eminent domain authority to the general provision and not mentioning it specifically in certain provisions, it was, by implication, effecting a repeal of much of the Department’s power of eminent domain for lands and forests, including the long-held power for acquisition of lands within the Adirondack and Catskills parks (see, ECL 9-0105 [2], [7], [7-a]; 9-0107, 9-0109).