In the Matter of BENJAMIN I. WECHSLER et al., Petitioners, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent.

Third Department, January 25, 1990

**APPEARANCES OF COUNSEL**

*Schulman & Gaiman (Mark Lewis Schulman* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Donald E. Shehigian* and *Peter G. Crary* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Petitioner Benjamin I. Wechsler (hereinafter petitioner) owns approximately 1,067 acres located in the Towns of Forestburgh and Thompson, Sullivan County. He also owns a hunting and fishing easement over some 1,800 adjacent acres owned by the State *(see, Wechsler v People,* 147 AD2d 755, *lv*

*denied* 74 NY2d 610, *appeal dismissed* 74 NY2d 793, 75 NY2d 808). Petitioner's property includes area around the Neversink River and unquestionably possesses natural beauty and wilderness, as well as geological, ecological and historical significance. Respondent seeks to acquire title to the property and easement for inclusion in the Neversink River Unique Area. Following a public hearing and receipt of written comments, respondent determined to acquire petitioner's property and easement rights. Petitioner then commenced this EDPL article 2 proceeding to challenge respondent's determination.

■ We consider petitioner's objections aware that our review in this type of case is statutorily limited (EDPL 207 [C]; *see, Matter of Waldo's, Inc. v Village of Johnson City,* 74 NY2d 718, 720). Petitioner argues that the proposed acquisition exceeds respondent's statutory authority. Respondent's Commissioner has broad statutory authority to acquire real property when money is available "for any of the purposes or functions of the department" (ECL 3-0305 [1]; *see, Matter of Bath & Hammondsport R. R. Co. v New York State Dept. of Envtl. Conservation,* 73 NY2d 434). ECL articles 51 and 52 allocate money for projects involving lands of special natural beauty, wilderness character and geological, ecological or historical significance in designated areas *(see,* ECL 51-0701 [3]; 51-0703 [4]; 52-0101 [4] [h]; 52-0701; *see also, Matter of Vaccaro v Jorling,* 151 AD2d 34, 38). There is no doubt that the proposed condemnation concerns lands satisfying these requirements so that it is within respondent's authority. As to the alleged unavailability of sufficient funds to complete the acquisition, we are of the view that there is insufficient proof to establish this contention.

■ Petitioner also contends that respondent failed to adhere to the procedural requirements of EDPL article 2. First, we disagree with his contention that respondent's determination and findings were not made within 90 days of the public hearing as required by EDPL 204 (A). Although the hearing concluded on December 14, 1988, respondent left the public record open to receive additional comments until January 14, 1989. The determination and findings were made within 90 days of that date when the record was closed and we believe that such action satisfies the procedural requirement. As to the other procedural irregularities suggested by petitioner, we find them insufficient to warrant annulment.

■ As to petitioner's claim that a public use, benefit or

purpose will not be served by respondent's establishment of recreational uses such as hunting, fishing and trapping, we need only refer to the Environmental Quality Bond Act of 1972. This act authorized funding for projects such as that before us, specifically including "the acquisition of land * * * because of their natural beauty, wilderness character or geological, ecological or historical significance * * * expansion of fishing and hunting opportunities * * * [and] the enhancement and improvement of public lands and facilities to provide additional public recreational opportunities" (L 1972, ch 658, § 1; *see also,* L 1986, ch 511, § 1 [§ 2]). Clearly, then, a public use, benefit or purpose is to be achieved by the proposed acquisition.

We further find no constitutional violations in the proposed acquisition. Contrary to petitioner's claim, respondent's descriptions of the properties involved were sufficient under EDPL 202 (A) to give notice of the location of the proposed public project. And while petitioner is correct that eminent domain cannot be used to take land in excess of that needed for the particular public purpose involved *(see, Hallock v State of New York,* 32 NY2d 599, 605), we are of the view that respondent's determination, made after extensive environmental impact studies and public participation, that the proposed acquisition is necessary to complete the Neversink River Unique Area and achieve the desired public purposes is rational and should be upheld *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 425; *Long Is. R. R. Co. v Long Is. Light. Co.,* 103 AD2d 156, 168, *affd* 64 NY2d 1088). Petitioner's remaining contentions have been considered and do not warrant annulment.

KANE, J. (dissenting). A careful reading of the enabling legislation identified with the Environmental Quality Bond Acts of 1972 and 1986 (L 1972, ch 658, § 1; L 1986, ch 511, § 1 [§ 2]) compels us to conclude that the proposed acquisition of petitioner's lands and rights is without the statutory jurisdiction or authority of respondent (EDPL 207 [C] [2]).

The genesis of this conclusion is in the definition section of the enabling legislation for Land Preservation and Improvement Projects in the 1972 act which defines a "Unique Area Preservation Project" as "[a] state project to acquire lands of special natural beauty, wilderness character, geological, ecological or historical significance *for the state nature and historical preserve* and *similar lands within a forest preserve*

*county* outside the Adirondack and Catskill Parks" (ECL 51-0703 [4] [emphasis supplied]). In providing for the allocation of funds received by the sale of bonds pursuant to the 1972 act, the same legislation provided that funds be expended "[f]or *preserving,* enhancing, restoring and improving the quality of land as set forth in titles 7, 9 and 11 of this article" (ECL 51-0103 [3] [emphasis supplied]). It should be noted that on approving the 1972 act and its enabling legislation, the Governor stated that they provided "a comprehensive approach to the problem of preserving, restoring and enhancing the three building blocks of a quality environment-water, air and land", and that it will "reserve funds for * * * preserving unspoiled and unique lands that would otherwise be lost as environmental resources forever" (Governor's mem, 1972 NY Legis Ann, at 364).

The language of the 1986 act and its enabling legislation is somewhat different. It does not provide specifically for "Unique Area Preservation Projects", but establishes a broader classification, entitled "Environmentally sensitive lands project", designed to preserve a variety of locations and areas including areas of "unique character", which in the language of the statute "means lands of special natural beauty, wilderness character, geological, ecological or historical significance *suitable for the state nature and historic preserve* and *similar lands within a forest preserve county* outside the Adirondack and Catskill parks" (ECL 52-0101 [4] [h] [emphasis supplied]). In the section providing for the allocation of funds under the 1986 act, the statute directs that moneys received be expended "[f]or *acquisition, preservation and improvement of lands, for historic preservation, and for municipal parks,* as set forth in titles seven and nine of this article" (ECL 52-0103 [2] [emphasis supplied]). It should be noted that a "Historic preservation project" is a category separately defined in ECL 52-0101 (10).

Although the statutory scheme is less than clear as to exactly what "lands" may be acquired and for what purpose, if the probable purpose is sought, a meaningful reading of statutory language defining a "Unique Area Preservation Project" will reveal a legitimate legislative objective. Approached in such a manner, the statute should be read, in our view, to mean that "unique" lands are to be preserved for "the state nature and historical preserve", as well as "similar lands within a forest preserve county outside the Adirondack and Catskill Parks", which must *also* be preserved for "the

state nature and historical preserve" (ECL 51-0703 [4]). This interpretation is consistent with well-established rules of statutory construction, for under the cannon of *ejusdem generis* "the scope of a word or phrase is measured by the surrounding terms" *(People v Bell,* 306 NY 110, 115), so that "where words of specific or inevitable purport are followed by words of general import, the application of the last phrase is generally confined to the subject matter disclosed in the phrases with which it is connected" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b], at 407). Moreover, under a somewhat similar canon known as *noscitur a sociis,* "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it" *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 595; *see,* McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a]). Applying those principles here, the meaning of the term "similar lands" is determined by reference to the preceding phrase, the "historic preserve", and such reference precludes the position taken by the Commissioner of Environmental Conservation that a separate category apart from either the "nature preserve" or "historical preserve" was contemplated by the Legislature.

If such an interpretation is also applied to the statutory definition of "unique character" in ECL 52-0101 (4) (h), an explanation is provided for the addition of the category "Historic preservation project" in ECL 52-0101 (10) and, more importantly, for limitation on the use of funds obtained through the 1986 act for "historic preservation" as they are allocated under ECL 52-0103.

This interpretation and analysis is not one of first impression, for, apparently, it was considered a substantial obstacle to be overcome by the Commissioner if respondent was to succeed in acquiring petitioner's lands and rights by eminent domain. This conclusion is justified by language contained in the final environmental impact statement which was included as part of the Commissioner's findings. Therein he stated that "[t]he change in the name of the area from Nature Preserve to Unique Area was intended to clarify that the area is not part of the constitutionally protected State Nature and Historical Preserve, and because the 1972 Environmental Quality Bond Act recognizes the Unique Area category for funding purposes". Furthermore, the "State Nature & Historical Preserve Trust" was specifically listed as the "Program Division" on the 1972 Bond Act project application which was attached by respondent to its brief and involved the area at issue.

We are comfortable in concluding that the above analysis demonstrates an unauthorized attempt to vest respondent with authority to exercise the power of eminent domain in a manner clearly not within the parameters of the statute. It is recognized and well settled that statutes conferring the power of eminent domain may not be extended by inference and implication and, in addition, are to receive a reasonably strict and guarded construction *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 293; *see also, Schulman v People,* 10 NY2d 249, 255-256).

Moreover, implicit throughout all of the various statutory provisions and memoranda, and explicit in the statutory language, the thrust is toward the "preservation" of lands and environmentally sensitive areas. This raises the question of how and why is it necessary to preserve lands which, admittedly, are already preserved and protected. One obvious answer is that if the word "preserve" is plainly defined as "to keep safe from harm or injury" (Random House Dictionary of English Language [unabridged 2d ed 1987]), in order to condemn there should be demonstrated a present need, a danger or a threatened injury, as recognized in the language of this court in *Matter of Vaccaro v Jorling* (151 AD2d 34, 38) and as implied in the Governor's memorandum of approval for the 1972 act (Governor's mem, 1972 NY Legis Ann, at 364). There is no question but that respondent is granted general authorization to exercise the power of eminent domain "for any of the purposes or functions of the department" (ECL 3-0305 [1]), and that such general power so provided is not limited by the lack of explicit reference to that power in any other specific provision of the ECL *(see, Matter of Bath & Hammondsport R. R. Co. v New York State Dept. of Envtl. Conservation,* 73 NY2d 434, 442).

However, and unlike the problem of statutory interpretation faced by the Court of Appeals in *Matter of Bath & Hammondsport R. R. Co. v New York State Dept. of Envtl. Conservation (supra),* the rules as applied in this instance are to identify the legislative intent and further the general purpose of respondent by a logical application of the statute as written *(cf., supra).* Respondent's position would have the Commissioner vested with an unfettered grant of power to condemn, willy nilly, *any* private lands which might be considered "unique areas", such as golf courses, many of which are located in spectacular and unique areas, private hunting reserves, as well as numerous private homes such as those

situated on extensive tracts of land along the uniquely scenic rivers, lakes and valleys of this State. In our view, the Legislature intended to limit the Commissioner's acquisition power to those purposes specifically outlined in the statute and does not authorize the unilateral creation of an entirely new and distinct project category. Such a limitation finds expression in a strict construction of the words of the statutes, a construction which must be followed in finding the grant of a power of eminent domain when there is any doubt as to whether the power exists *(see, supra,* at 442-444 [Kaye, J., dissenting]).

Accordingly, We would grant the petition and annul respondent's determination.

CASEY and LEVINE, JJ., concur with MAHONEY, P. J.; KANE and MERCURE, JJ., dissent and vote to annul in an opinion by KANE, J.

Determination confirmed, and petition dismissed, without costs.