*259 OPINION OF THE COURT
Abraham Gerges, J.
The City of New York commenced this eminent domain proceeding seeking to acquire property located at block 84, lots 280, 318, 324, 339, 342, 343, 353, 356, 361, 363, 371; block 89, lot 1; and block 96, lot 1 in Staten Island.
Facts
Herein, the City seeks to acquire a 14.5-acre site for use as the Jones Woods addition to the Skyline Playground to provide additional recreational facilities for the community. The subject property is bounded by Brighton Avenue, Butler Terrace and Van Tuyl Street, immediately adjacent to Skyline Playground and is comprised of a wooded hillside and a large, flat meadow. Skyline Playground was constructed in 1994 as a neighborhood park.
Claimants Lloyd Putter, Bernard Putter and Marvin Putter own block 84, lots 280, 318, 324, 339, 342, 343, 356, 361, 363 and 371, which lots comprise approximately six acres. This dispute arises from claimants’ assertion that the City delayed the approval of their proposal to build approximately 50 affordable town houses on the site, allegedly because of its desire to keep “working class housing for people of color” out of the area. In their answer, claimants oppose the taking of their property, asserting that, while the City Planning Commission (CPC) resolution of June 12, 2002 that approved the addition to the park authorized the amendment of the City Map to reflect any acquisition of property within the proposed Jones Woods Park, it did not refer to or contemplate the acquisition of private property through eminent domain; that no public notice was given prior to the public hearing and consideration of the resolution so that the City is not in compliance with article 2 of the Eminent Domain Procedure Law, more particularly, EDPL 206 (C); and that the property is not required for public use.
When the instant dispute first came before this court over one year ago, claimants argued that the instant proceeding should be dismissed or stayed pursuant to CPLR 3211 (a) (4) until a related proceeding commenced by them against the City in New York County was resolved (Putter v City of New York, Sup Ct, NY County, Apr. 26, 2006, Index No. 602522/04, Feinman, J.) (the 2004 action). Therein, claimants sought a judgment requiring CPC to act on their application for authoriza *260 tion to proceed with development of the site pursuant to the plans filed February 5, 2002 or July 13, 2004, an award of damages in the amount of $7,250,000 for the City’s alleged de facto taking of their property by mapping it for use as a park, and for money damages equal to the difference between the value of the property under the zoning regulations in effect prior to the enactment of the lower density growth management area, which decreased the permissible building density, and its value thereafter, to compensate them for the City’s alleged conduct in fraudulently inducing them to discontinue the action that they commenced against the City in 2002 (Putter v City of New York, Sup Ct, NY County, 2002, Index No. 123553/02) (the 2002 action).
As is also relevant, the 2004 action incorporated the complaint in the 2002 action, which sought a judgment declaring that the portion of the City Map which encompassed their property was void, an award of compensation for the taking of their property by designating it for use as a park, a judgment authorizing them to develop the site in accordance with the plan that they filed in February 2002, and a judgment declaring the remapping to be invalid on the grounds that they were not given timely notice of the hearing before the community board and that CPC failed to consider their development project. The 2002 action was discontinued by the Putters, based upon a letter agreement dated May 15, 2003 (the May 15, 2003 agreement), in which the City represented that the action taken by CPC in amending the City Map was not an impediment to the Putters’ plans to develop the site.
By decision dated May 13, 2005, this court stayed the instant proceeding pending resolution of the interrelated issues in the 2004 action (the May 13, 2005 decision). A detailed summary of the facts underlying claimants’ efforts to develop the site, along with the City’s proceedings approving the demapping of the necessary streets, the creation of Jones Woods Park and the acquisition of the land, is set out in the May 13, 2005 decision and will not be reiterated herein.
By decision dated April 26, 2006 issued in the 2004 action (the April 26, 2006 decision), as is relevant herein, the Honorable Justice Paul G. Feinman decided that the City was estopped from arguing that the Putters’ challenge to the Uniform Land Use Review Procedure (ULURP) process in the 2004 action was time-barred because claimants altered their position in reliance upon the May 15, 2003 agreement. Therein, the court also *261 denied the Putters’ motion to amend the complaint on the ground that there was no merit to the proposed causes of action, i.e., seeking a judgment declaring that: (1) CPC’s resolution to approve the Parks Department’s application for remapping of the site for park purposes is invalid and does not exempt the City from the public hearing requirements under the EDPL, because inadequate notice of the public hearing was given, because CPC did not notify the public that it intended to use the 2002 hearings for EDPL purposes, and because CPC did not consider the significance of claimants’ proposed housing development; and (2) the City became estopped from relying on the public hearings prior to the mapping resolution as sufficient to comply with the public hearing requirements of the EDPL for the City’s condemnation petition pursuant to the May 15, 2003 agreement.
In so holding, Judge Feinman determined that:
“Until the City filed its eminent domain petition in September 2004, plaintiffs had no reason to raise the EDPL issues, particularly not the question of whether the ULURP process initiated by the Department of Parks in its mapping application triggered the exemption from notice requirements pursuant to EDPL § 206. Although it may be appropriate to consider the issue of the City’s compliance with UL-URP in this action, this court concludes that the eminent domain proceeding, pending in Richmond County, is the appropriate forum in which to consider whether the City has complied with the EDPL.” (Apr. 26, 2006 decision at 10.)
In addressing the issue of the adequacy of the notice given in the underlying ULURP proceeding, the court further held that even if the Putters did not receive notice of the community board hearing until the day after the meeting, as they allege, they cannot successfully argue that they were prejudiced by the belated notice, since Bernard Putter attended. Similarly, Judge Feinman found that, since the Putters received notice of the CPC meeting but chose not to attend, they could not successfully challenge CPC’s failure to take their development plans into consideration in approving the project.
After Judge Feinman issued the April 26, 2006 decision, the parties herein submitted supplemental memoranda of law and sought disposition of the instant petition.
*262 The Parties’ Contentions
Claimants now argue that, although as a general principle, the City’s proceedings pursuant to ULURP may be adequate to exempt it from the hearing requirements of EDPL article 2, pursuant to EDPL 206 (C), the ULURP proceedings were not sufficient in this case because the City did not purport to be acting as a condemnor when the requisite hearings were conducted. Claimants further contend that, had they been aware of the City’s intention to take their property by eminent domain, they would have established at the hearings that the taking was not for a public purpose, but was instead a subterfuge, by demonstrating that the true purpose of the condemnation “is the racially motivated prevention of the building of working class housing” and/or that the “City currently does not, and never did, have any intention whatsoever to actually build a park on the Site.”
In response, the City argues that, since Judge Feinman decided that the City complied with ULURP it is now entitled to an order of condemnation. The City further argues that any issues regarding the merits of the underlying ULURP had to be raised in the actions commenced in New York County, and hence cannot be raised herein. Finally, the City contends that claimants cannot succeed on their claim that the approved use of the property as a park does not serve a public purpose, since their claim that the City had improper motives in approving the project is unsupported.
The Law
When a petition seeking to take title to property in an eminent domain proceeding is filed, a condemnor is entitled to an order granting the petition “upon due proof of service of notice and upon filing of such petition and proof to its satisfaction that the procedural requirements of this law have been met” (EDPL 402 [B] [5]). In addressing the operation of New York’s eminent domain procedures, the Court of Appeals explained in the recently decided case entitled Matter of City of New York (Grand Lafayette Props. LLC) (6 NY3d 540, 543 [2006]) that:
“Under the Eminent Domain Procedure Law (EDPL), a two-step process is required before a condemnor obtains title to property for public use. First, under EDPL article 2, the condemnor must make a determination to condemn the property either by using the hearing and findings procedures *263 of EDPL 203 and 204 or by following an alternative procedure permitted by EDPL 206. Second, pursuant to EDPL article 4, the condemnor must seek the transfer of title to the property by commencing a judicial proceeding known as a vesting proceeding.”
In discussing the purpose to be served by an article 2 hearing, it has been recognized that
“[t]he EDPL provides that a condemnor must hold a public hearing to inform the public and to review the public use to be served by a proposed public project and the impact on the environment, unless exempt from that requirement for one or more of the reasons enumerated in EDPL 206” (Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge, 213 AD2d 409, 409 [1995], citing EDPL art 2).
“The principal purpose of EDPL article 2 ‘is to insure that [a condemnor] does not acquire property without having made a reasoned determination that the condemnation will serve a valid public purpose’ ” (Matter of Waldo’s, Inc. v Village of Johnson City, 141 AD2d 194, 198 [1988], affd 74 NY2d 718 [1989], quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417-418 [1986]; accord Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue, 28 AD3d 488, 489 [2006]).
The EDPL also provides several exemptions for compliance with the article 2 hearing requirements. As is relevant in this matter, EDPL 206 (C) provides that:
“The condemnor shall be exempt from compliance with the provisions of this article when: . . .
“(C) pursuant to other law or regulation it undergoes or conducts or offers to conduct prior to an acquisition one or more public hearings upon notice to the public and owners of property to be acquired, and provided further that factors similar to those enumerated in subdivision (B) of section two hundred four herein may be considered at such public hearings.”
EDPL 204 (B) provides that:
“The condemnor, in its determination and findings, shall specify, but shall not be limited to the following:
“(1) the public use, benefit or purpose to be served by the proposed public project;
“(2) the approximate location for the proposed public project and the reasons for the selection of that *264 location;
“(3) the general effect of the proposed project on the environment and residents of the locality;
“(4) such other factors as it considers relevant.”
Further, in the recent case of Matter of City of New York (Grand Lafayette Props. LLC) (6 NY3d 540 [2006]), the Court of Appeals approved of the City’s use of its ULURP procedures as “an alternate condemnation procedure authorized under EDPL 206 (C)” (id. at 544). Similarly, in Matter of Sanitation Garage Brooklyn Dists. 3 & 3A (32 AD3d 1031, 1034 [2006]), the Appellate Division, Second Department, held that the City’s ULURP proceedings satisfied the exemption provision of EDPL 206 (A) (see generally Matter of Rockland County Sewer Disk No. 1 v J. & J. Dodge, 213 AD2d 409 [1995]; Matter of City of New York [Lemon Creek/Sandy Brook & Waringin Ltd.], Sup Ct, Kings County, 1995, Index No. 2760/95).
In addressing the issue of how a challenge to an EDPL 206 exemption should be determined in the first instance, the Appellate Division, Second Department, has held that such challenge may be raised in a CPLR article 78 proceeding intended to test the exemption determination or in the proceeding that the condemnor must commence for permission to acquire the property and to file an acquisition map (see Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d 1031, 1034 [2006]; Matter of Rockland County Sewer Disk No. 1, 213 AD2d at 410; Matter of Town of Coxsackie v Dernier, 105 AD2d 966, 967 [1984]). In contrast, however, a challenge to the underlying approval process of a project under ULURP should be raised in a CPLR article 78 proceeding, and cannot be properly interposed in an answer to the City’s condemnation petition (see Matter of City of New York, 6 NY3d at 549; Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d at 1034; P & N Tiffany Props., Inc. v Village of Tuckahoe, 33 AD3d 61 [2006]). A claim premised upon the contention that the property is not being acquired for a proper public purpose would be included among such challenges (see generally Matter of City of New York, 6 NY3d at 549 [claimant’s contention that acquisition of the entire parcel exceeded the City’s needs should have been raised within the article 78 context]).
It is also well settled that only property needed for a public purpose can be condemned. “While a condemnor cannot take, by use of the power of eminent domain, property not necessary to fulfill the public purpose, it is generally accepted that the *265 condemnor has broad discretion in deciding what land is necessary to fulfill that purpose” (Matter of Gyrodyne Co. of Am., Inc. v State Univ. of N.Y. at Stony Brook, 17 AD3d 675, 676 [2005], lv denied 5 NY3d 716 [2005], citing Hallock v State of New York, 32 NY2d 599, 605 [1973]; Matter of Wechsler v New York State Dept. of Envtl. Conservation, 153 AD2d 300 [1990], affd 76 NY2d 923 [1990]). Hence, “[a]bsent a clear showing of unreasonableness, courts have been reluctant to interfere with a condemning authority’s determination that a particular site is needed for a public purpose” (Matter of C/S 12th Ave. LLC v City of New York, 32 AD3d 1, 10 [2006], citing Kelo v City of New London, 545 US 469 [2005]).
Hence, it has been held that a condemnor’s
“rational determination in that regard will not be disturbed (see Matter of Gyrodyne Co. of Am., Inc. v State Univ. of N.Y. at Stony Brook, 17 AD3d 675, 676 [2005]; Matter of Wechsler v New York State Dept. of Envtl. Conservation, 153 AD2d 300, 302 [1990], affd 76 NY2d 923 [1990]). The petitioners’ unsupported allegations that the Town’s determination was made in bad faith and for purposes other than those stated fall far short of a ‘clear showing’ (Village Auto Body Works v Incorporated Vil. of Westbury, 90 AD2d 502, 502 [1982]) that the Town’s conduct was ‘irrational, baseless or palpably unreasonable’ (Matter of Dowling Coll. v Flacke, 78 AD2d 551, 552 [1980]; see Matter of Rafferty v Town of Colonie, 300 AD2d 719, 721 [2002]).” (Matter of Stankevich v Town of Southold, 29 AD3d 810, 811 [2006].)
From this it follows that a claimant’s unsupported contention that property was not taken for a proper public purpose is insufficient to set aside the determination (see e.g. Matter of Woodfield Equities, 28 AD3d at 489). Similarly, “mere allegations of bad faith do not justify the judicial creation of an additional ‘due process’ hearing” (Matter of Waldo’s, 74 NY2d at 722).
Discussion
Although the above discussion of the underlying facts and the multiple related lawsuits that have been commenced reveal that the Putters have raised a number of claims against the City, the only issue to be resolved herein is whether the City makes a prima facie showing of entitlement to an order granting its petition. *266 * Addressing this issue, the court finds that the City has satisfied its burden by asserting that it intends to acquire the property for use as a park, describing the land to be taken, and stating that it is exempt from compliance with the hearing provisions of article 2 of EDPL by reason of its approval of the acquisition pursuant to ULURP
The court must accordingly determine if there is merit to claimants’ assertion that the City’s reliance upon the ULURP proceedings is insufficient to exempt it from the hearing requirements of article 2 of EDPL, an issue that may be properly resolved by this court in the instant condemnation proceeding (see Apr. 26, 2006 decision at 10; see generally Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d 1031; Rockland County Sewer Dist. No. 1, 213 AD2d at 410; Matter of Town of Coxsackie, 105 AD2d at 967). In this regard, the court finds that the procedures followed by the City, as described in detail in the May 13, 2005 decision, establish that “the City satisfied its statutory burden by demonstrating that pursuant to EDPL 206 (A), it was exempt from the public hearing and determination requirements of EDPL article 2 as it had considered and submitted to the CPC the factors set forth in EDPL 204 (B)” (Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d at 1034, citing EDPL 206 [A]; Matter of Rockland County Sewer Dist. No. 1, 213 AD2d at 411-412; see generally Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540 [2006]).
In so holding, the court rejects claimants’ contention that the statutory exemption should not be applicable herein because the approval process, and hence the notices given pursuant thereto, did not specifically state that the property needed to create the park would be acquired by eminent domain. In reaching this conclusion, it must first be emphasized that, from the inception of the approval process, the City clearly stated that its application pertained to the demapping of streets, the creation of the park and “any acquisition or disposition of real property related thereto” (see May 13, 2005 decision at 7). “To acquire” is generally defined as “to come into possession or control of.” Hence, there is no support for the Putters’ subjective and self-serving claim that the term “acquisition” as used by the City in the ULURP proceeding should be construed to mean “purchase.”
*267 Moreover, the Putters, as sophisticated business people and developers who value their property at more than $7,000,000, must be presumed to have known that the needed property could be acquired either by purchase or by eminent domain, particularly since they argued that the property was so taken in the 2002 action. Further, claimants were represented by architects, engineers and/or attorneys since they began their efforts to gain approval for their proposed construction project. Hence, even if claimants were unaware that the City could acquire the property mapped for the Jones Woods addition to the park by eminent domain, it is patently incredible that they were not so informed by the experienced professionals retained by them.
Further, the Putters’ interpretation of the law is not supported by the statutory language. In this regard, EDPL 206 (C) requires only that a condemnor offer to or conduct one or more public hearings, on notice, and that it consider factors similar to those set forth in EDPL 204 (B), i.e., the public use, the benefit or purpose to be served, the approximate location and the reasons for the selection of that location, and the general effect on the environment and residents of the locality. The review procedure undertaken herein, which included two public hearings, statements prepared pursuant to the New York State and New York City environmental review acts, and the resolution approving the addition to the park, meet this standard.
In this regard it is also significant to note that New York City Charter § 197-c (a) (11), the applicable ULURP regulation, specifically requires that the review procedures be followed for the acquisition by the City of real property “including acquisition by purchase, condemnation, exchange or lease” (emphasis added). Hence, the Charter envisioned that the review for property taken by eminent domain would be pursuant to ULURP
The remainder of the Putters’ claims, as they pertain to the propriety of the underlying ULURP process, including their assertions that proper notice was not provided and that the property is not needed for a proper public purpose, should have been raised in an article 78 proceeding commenced within four months of the City’s final determination, and are accordingly time-barred herein (see generally Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540 [2006]). The court also notes that, in the April 26, 2006 decision, Judge Feinman found that the City complied with the notice requirements of ULURP (Apr. 26, 2006 decision at 13-14). Hence, claimants are *268 collaterally estopped from relitigating that finding in this proceeding (see generally Bansbach v Zinn, 1 NY3d 1, 10 [2003], rearg denied 1 NY3d 593 [2004] [where a pending issue was raised, necessarily decided and material in a prior action, and where the party to be estopped had a full and fair opportunity to litigate the issue in the earlier action, fairness and efficiency dictate that the party should not be permitted to try the issue again]). In the alternative, were this court to address the issues of the propriety of the notice afforded in the underlying ULURP proceedings, it would reach the same conclusions, for the same reasons.
Finally, if claimants’ argument that they should be afforded the opportunity to raise their challenge to the alleged underlying ULURP procedures in an answer in a condemnation proceeding is accepted, the exemption provisions of EDPL 206 would have no practical effect, since any alternative review proceeding would be subject to review in the condemnation proceeding, a view specifically rejected by the Court of Appeals in Matter of City of New York (Grand Lafayette Props. LLC) (6 NY3d 540 [2006]). In that decision, the Court held “that any challenge to the merits underlying the [resolution in the ULURP proceeding] must be raised within the article 78 context” (id. at 549). Hence, contrary to claimants’ assertions, they are not entitled to contest the underlying review process in its entirety, but only whether the process entitles the City to an exemption to a hearing pursuant to article 2 of EDPL.
In the alternative, even if this court were to address claimants’ contention that the property is not being taken for a proper public purpose, their conclusory allegations of improper motivation or their assertion that a park is not needed are insufficient to warrant denial of the City’s petition (see Matter of Waldo’s, 74 NY2d at 722; Matter of C/S 12th Ave., 32 AD3d at 10; Matter of Stankevich, 29 AD3d at 811; Matter of Woodfield Equities, 28 AD3d at 489; Matter of Gyrodyne Co., 17 AD3d at 676). This conclusion is made even more compelling by the fact that although claimants raised this issue as early as August 5, 2004, when they commenced the 2004 action, they have yet to come forward with any evidentiary proof to support their allegations.
Similarly unpersuasive is claimants’ subjective determination that the proposed park need not include their land, “[s]ince the selection of a particular site ... is properly a matter for the condemning authority rather than the court” (Matter of Waldo’s, 74 NY2d at 721, citing Matter of Neptune Assoc. v *269 Consolidated Edison Co. of N.Y., 125 AD2d 473, 475 [1986]). Claimants’ contention that the existing parks are grossly underutilized is also inadequate to warrant a finding that the park is not needed, since the City’s determination that the property is needed for a public purpose “ ‘is regarded as “well-nigh conclusive,” not a question of fact for de novo determination’ ” (Greenwich Assoc. v Metropolitan Transp. Auth., 152 AD2d 216, 221 [1989], appeal dismissed sub nom. Matter of Regency-Lexington Partners v Metropolitan Transp. Auth., 75 NY2d 865 [1990], quoting Matter of Jackson, 67 NY2d at 425, quoting Berman v Parker, 348 US 26, 32-33 [1954]). Hence, “[i]nasmuch as the court is not authorized to substitute its views for those of the agencies involved in making their determination, there is certainly no authority that would allow the court to substitute the views of parties opposed to the Project for those of the agencies” (Matter of City of New York, 5 Misc 3d 1014[A], 2004 NY Slip Op 51375[U], *24 [2004], affd sub nom. Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d 1031 [2006]).
Finally, the court finds claimants’ protestations that they have not been afforded the opportunity to cross-examine the people who submitted affidavits on the City’s behalf are without merit. In this regard, it is well settled that:
“nothing in article 2 of the EDPL requires a trial-type hearing to challenge a tentative decision to condemn. To the contrary, EDPL 203 provides only that ‘any person in attendance [at a hearing] shall be given a reasonable opportunity to present an oral or written statement and to submit other documents concerning the proposed public project.’ ” (Matter of Jackson, 67 NY2d at 424.)
Conclusion
For the above reasons, claimants’ answer is stricken and the City’s petition is granted. The City is directed to settle an order authorizing the filing of the acquisition map and vesting title to the subject property, on notice.

 The court notes, however, that claimants’ cause of action seeking money damages for the City’s alleged conduct in fraudulently inducing them to discontinue the 2002 action is still pending in the 2004 action, where all issues relating thereto can be litigated.