OPINION OF THE COURT
 

 Bellacosa, J.
 

 The New York State Department of State (Department) seeks a judicial interpretation of Real Property Law § 442-c that would allow it to suspend or revoke a corporate broker’s license based on interpreting "actual knowledge” to include imputed knowledge of employee-salespersons. We agree with the Appellate Division that the Department’s theory and proffered interpretation of the governing words of the statute are not supportable. We thus affirm that Court’s order insofar as it annulled the Department’s determination suspending the license of the corporate broker, Roberts Real Estate, Inc. (Roberts Inc.), on the basis of untrustworthiness and incompetence under Real Property Law § 441-c (1) and § 442-c. However, because the absence of actual knowledge does not insulate real estate brokers from disciplinary measures less severe than license suspension or revocation, there must be a remand to the Department for consideration of an appropriate lesser sanction, if any.
 

 The Department found Roberts Inc. guilty of untrustworthiness and incompetence in failing to inform purchasers of the presence of methane gas in the well water available to their newly constructed homes. The sanction was suspension of its real estate broker’s license for a definite period of three months or the payment of a $3,000 fine. We granted leave to appeal to the Department from the Appellate Division’s annulment of that determination. The Department also found the corporate broker and two of its individual brokers guilty
 
 *119
 
 of failure to properly supervise and manage the business or activities of its licensed sales staff. We denied petitioners-respondents’ cross motion for leave to appeal with respect to these other aspects of the Department’s determination (79 NY2d 755). Thus, only the Department’s finding that Roberts Inc. demonstrated untrustworthiness and incompetence is before us.
 

 We conclude that knowledge possessed by sales employees of a corporate broker is not by itself sufficient to satisfy the statutory ingredient of "actual knowledge” that must be chargeable against a broker under Real Property Law § 442-c for revocation or suspension of license purposes. Actual knowledge of an individual representative broker, director or officer is required to impose a suspension or revocation of any broker’s license, including the one held by this corporate broker, Roberts Inc.
 

 In 1986, Roberts Inc. was engaged to market homes to be built in a new subdivision in New Scotland, Albany County, known as Orchard Park. The Albany County Health Department authorized construction to begin based, in part, upon satisfactory test results concerning water quantity and bacteriological and chemical quality. The water from one well drilled on one of the subdivision lots was tested.
 

 Roberts Inc. effected a multiple listing of the proposed homes with the Albany County Board of Realtors and assigned the marketing responsibility of the homes to its Guilderland branch office. Roberts, the president of Roberts Inc., was the designated broker for the corporation. Newell, manager of the Guilderland branch office, was designated to act as a representative real estate broker for Roberts Inc. Newell also supervised associate broker Dede and sales agent Curren. Curren was designated as the listing agent for the Orchard Park subdivision. In March 1986, Dede and Curren attended a meeting with the Orchard Park developer, at which time test documents were produced and representations were made that the aquifer below Orchard Park provided an excellent source of water for the subdivision. In a subsequent meeting, an attorney for the developer showed Curren the site map approved by the Albany County Health Department and informed Curren that the attorney would be the liaison with the Health Department concerning all well water tests in the subdivision.
 

 Roberts Inc. began marketing homes in the subdivision in
 
 *120
 
 April 1986. The sales were generally processed in this fashion: A prospective buyer would select a lot and a style of home, and execute a contract of sale with the builder. After the home was fully constructed, a septic system would be installed and a well drilled; the purchaser would inspect the house with the builder and Curren in a final "walk through”. During the walk through, the well-water system would be inspected, and the parties would note any items to be corrected or resolved before the closing of title. All contracts of sale for homes in the subdivision conditioned mortgage financing upon a sufficient supply of usable water. Also, a certificate of occupancy for each home would be issued only after the Albany County Health Department inspected the water supply system and certified that the septic system and the well water supply met certain standards.
 

 Dissatisfaction developed among 13 buyers who had contracted to purchase homes in the subdivision between April 1986 and January 1987, and they eventually filed complaints against Roberts Inc. with the Department. It investigated and then brought licensing disciplinary charges against a variety of licensees, alleging that by late September 1986, two of Roberts Inc.’s sales associates and Curren, the listing sales agent, knew that the well water supplied in the subdivision was contaminated with methane gas. The Department’s Administrative Law Judge found that corporate broker Roberts Inc. derivatively knew of the presence of methane gas because its sales people knew; that the dangerous defect and condition was not disclosed to prospective purchasers; and that Roberts Inc. and two of its representative brokers, Roberts and Newell, demonstrated incompetence in failing to supervise and manage the business of the office or the activities of its licensed sales staff as required by 19 NYCRR 175.20. Upon those findings, the Administrative Law Judge recommended, insofar as relevant to this appeal, that Roberts’ corporate broker’s license be suspended for three months or, alternatively, that a fine be imposed. The Secretary of State approved the findings and recommendation, and this judicial challenge ensued.
 

 The parties agree that the statutory provisions of article 12-A of the Real Property Law, including section 442-c in particular, govern. Thus, we are confronted solely with a question of statutory interpretation whether the Department can revoke or suspend the license of a corporate broker by imputing to it the knowledge of its sales agents. Relevant to the answer to that question is the consideration that the interpretation be
 
 *121
 
 consistent with the statutory limitation of "actual knowledge” for the imposition of that kind of penalty to be imposed on brokers.
 

 Real Property Law § 441-c (1) empowers the Department to revoke or suspend the license of a real estate broker or salesperson, or reprimand or impose a fine, if the broker or salesperson has violated any provision of article 12-A of the Real Property Law or has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesperson. Real Property Law § 442-c, adds, in pertinent part, that no violation of any provision of article 12-A by a real estate salesperson or other employee "shall be deemed to be cause for the revocation or suspension of the license of
 
 the broker,
 
 unless it shall appear that
 
 the broker
 
 had
 
 actual knowledge
 
 of such violation” (emphasis added). Real Property Law § 442-c thus limits the powers and options conferred on the Department under Real Property Law § 441-c when (1) a broker is being penalized for the misconduct of the broker’s employee, and (2) the penalty being sought is revocation or suspension of the employer-broker’s license.
 

 The Department urges that we infuse the statutory meaning and sweep of "actual knowledge” with common-law agency principles. By that importation, a corporate broker, a legally Active entity, would be chargeable with the knowledge possessed by all employees and agents, up and down the ladder of responsibility, so long as they were acting within the scope of their duties
 
 (see, Karaduman v Newsday, Inc.,
 
 51 NY2d 531, 546-548,
 
 rearg denied
 
 52 NY2d 899;
 
 see also, Corrigan v BobbsMerrill Co.,
 
 228 NY 58, 69;
 
 Yager Pontiac v Danker & Sons,
 
 41 AD2d 366, 368,
 
 affd
 
 34 NY2d 707).
 

 Roberts Inc. counters that the "actual knowledge” component of Real Property Law § 442-c plainly restricts the licensing disciplinary options of the Department. The statute, as Roberts Inc. would have us interpret it, protects corporate and individual brokers against the imposition of the most serious disciplinary measures, when predicated derivatively on any affiliated employee’s misconduct. It acknowledges that as a Active entity it can possess "actual knowledge” only through attribution from agents, but strongly contends that such imputation can be derived only from agents with high ranking or principal-level authority.
 

 The licensing sanctions contained in Real Property Law article 12-A, including suspension, revocation, fines or repri
 
 *122
 
 mand, were not designed and enacted to supplant existing common-law remedies
 
 (see, 2 Park Ave. Assocs. v Cross & Brown Co.,
 
 36 NY2d 286;
 
 see also, Matter of Stowell v Cuomo,
 
 52 NY2d 208, 212-213). Purchasers, for example, aggrieved by a latent defect may bring damage claims for fraud or misrepresentation against the seller or seller’s agent or against contractors for breach of implied warranty
 
 (Caceci v Di Canio Constr. Corp.,
 
 72 NY2d 52;
 
 see also,
 
 codification in General Business Law art 36-B), in addition to any consumer or licensing complaints they may wish to initiate with governmental bodies. Thus, the principles of responsibility in the distinct spheres of liability and license regulation ought not be merged. Mixing the statutory regulatory scheme and concepts of one field with the decisional law precepts of another field does not make for a prudent or workable blend
 
 (see, e.g., Matter of Lieber [Ross]
 
 46 NY2d 867 [administrative agencies are not bound by common-law or statutory rules of evidence or by technical or formal rules of procedure]).
 

 Further examination of the particular statutes adds more support to our conclusion. Real Property Law § 442-c distinguishes on its face between a salesperson who commits an infraction and a broker who employs that salesperson. The statute withholds from the Department the power to revoke or suspend a broker-employer’s license unless the broker-employer can be shown to have "actual knowledge”. If, as the Department urges, knowledge of any salesperson may be imputed to a corporate broker employer, then the statutory distinction becomes significantly blurred and uneven. We have noted that strict construction of this statutory scheme is essential to insure that the legislative policy of punishing only those with actual knowledge is properly effectuated
 
 (see, 2 Park Ave. Assocs. v Cross & Brown Co.,
 
 36 NY2d 286, 290-291,
 
 supra).
 
 The Department’s approach would contradict that interpretation by arrogating to itself instead an expansive new power not granted by the Legislature, but rather explicitly circumscribed in the very statute that defines the agency’s authority.
 

 In answer to the Department’s argument for incorporation by reference of common-law agency principles, we note that it fails to take into consideration the very different purposes for which discrete rules have evolved to govern the relationship of parties in traditional liability settings, as contrasted with the relationships and purposes of administrative law licensing
 
 *123
 
 penalty regimes. Indeed, its view would significantly alter the clear, limiting mandate of Real Property Law § 442-c, and would ironically also create two different and uneven disciplinary rules for corporate and individual brokers.
 

 We emphasize that while we agree with the Appellate Division’s result and basic approach in this case, our precise formulation of the rule is slightly broader than the apparently more limited articulation by that Court (171 AD2d 217, 221). We hold that the purposes and limitations of the relevant statute can best be effectuated and harmonized by allowing a corporate broker to be charged with "actual knowledge” only when its principals, i.e., representative brokers, directors or officers have actual knowledge of the pertinent violation or misrepresentation.
 

 The Department, for the purposes of this case and to secure an authoritative judicial interpretation, has proceeded on the basis — there is no contrary proof in the record — that none of Roberts Inc.’s individual brokers, officers or supervisory management personnel knew that the wells were contaminated with methane gas. Because we conclude that Real Property Law § 442-c restricts the authority of the Department from revoking or suspending brokers’ licenses absent actual knowledge, the suspension in this case of a corporate broker’s license for acts and knowledge of only its salesperson employees is not authorized and that determination was correctly annulled by the Appellate Division. However, the absence of "actual knowledge” does not insulate real estate brokers from disciplinary measures less severe than license suspension or revocation for misconduct
 
 (see,
 
 Real Property Law § 441-c [1]; § 442-c). Thus, a remand for consideration of an appropriate lesser sanction, if any, based on demonstrated untrustworthiness or incompetency, is necessary.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by remitting the matter to Supreme Court with directions to remand to the Department of State for further consideration in accordance with this opinion, and, as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone and Hancock, Jr., concur; Judge Smith taking no part.
 

 Order modified, etc.