OPINION OF THE COURT
 

 Bellacosa, J.
 

 This litigation and appeal frame the issue whether the statutory housing merchant implied warranty, found in General Business Law article 36-B, is a full substitute for the ante
 
 *301
 
 cedent common-law housing merchant implied warranty, recognized in
 
 Caceci v Di Canio Constr. Corp.
 
 (72 NY2d 52, 56). We hold that the statute eclipses the case.
 

 In 1991, plaintiff Fumarelli bought a new luxury condominium from defendant Marsam Development, Inc. The purchase agreement contained this all-encompassing provision:
 

 “the sponsor makes no housing merchant implied WARRANTY OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION WITH THIS PURCHASE AGREEMENT OR THE UNIT, AND ALL SUCH WARRANTIES ARE EXCLUDED, EXCEPT AS PROVIDED IN THE LIMITED WARRANTY ANNEXED TO THIS PURCHASE AGREEMENT. THE EXPRESS TERMS OF THE ANNEXED LIMITED WARRANTY ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS PURCHASE AGREEMENT; THEY SHALL SURVIVE THE CLOSING OF TITLE; AND THERE ARE NO OTHER WARRANTIES WHICH EXTEND BEYOND THE FACE THEREOF.”
 

 The referenced “limited warranty” was also separately included in the agreement in “plain English,” with extensive specificity (see, General Business Law § 777-b [4]). The limited warranty provision “modifie[d] the housing merchant implied warranty under Article 36-B of the New York State General Business [Law] to the extent that the provisions [it] contained * * * [we] re inconsistent with or contradicted] the provisions of Article 36-B, and exclude[d] all other warranties both express and implied.”
 

 In October 1992, over a year after the closing and transfer of title, plaintiff discovered a flaw in the sprinkler system master pump. He subsequently discovered other problems in a bathroom drain, a hand rail, and a plumbing fixture. In February 1993, a sprinkler head burst, causing extensive damage. Plaintiff ordered repairs to be done at his own expense. Then, he notified the defendant seller of the defects, and demanded reimbursement for the damages and cost of the repairs. When Marsam Development refused to pay, Fumarelli sued.
 

 In the facet of the case still at issue on this appeal, Supreme Court had denied dismissal of the causes of action for breach of contract. The ground was that General Business Law article 36-B does not, by necessary implication, supplant the common-law remedy.
 

 The Appellate Division, presented solely with the question of the denial of dismissal, unanimously reversed, and granted summary judgment to defendant. The court reasoned that, al
 
 *302
 
 though the statutory remedy coexists with the common-law version, General Business Law article 36-B allows a builder-vendor to modify or exclude the common-law one. The Appellate Division ruled that Marsam Development implemented that statutory authorization and acquired the benefit of that contractual exclusion of any other warranties. While we agree with the Appellate Division and thus affirm, we do so for the additional, overarching reason that the statute, in any event, effects a complete substitute for the common-law remedy.
 

 Six years ago, this Court indicated how it viewed the legislation at issue. In
 
 Matter of Roberts Real Estate v New York State Dept. of State, Div. of Licensing Servs.
 
 (80 NY2d 116, 122), we classified the statutory remedy as a “codification” of
 
 Caceci.
 
 Today, we build on that viewpoint and expressly hold that General Business Law article 36-B is a full, effective, and realistic substitute for the protections and rationale recognized in
 
 Caceci v Di Canio Constr. Corp.
 
 (72 NY2d 52,
 
 supra).
 

 In rendering our holding today, we bear in mind this Court’s dual function to rule on the particular case and to try to settle important legal issues, as posed and litigated by the parties. At the beginning of this century, a busy, practicing lawyer wrote what could have been merely a dry treatise on the jurisdiction of the Court of Appeals
 
 (see,
 
 Cardozo, Jurisdiction of the Court of Appeals of the State of New York [2d ed 1909]). Lawyer Cardozo summarized as follows:
 

 “the court’s function in our judicial system * * * is, briefly stated, the function, not of declaring justice between man and man, but of settling the law. The court exists, not for the individual litigant, but for the indefinite body of litigants, whose causes are potentially involved in the specific cause at issue. The wrongs of aggrieved suitors are only the algebraic symbols from which the court is to work out the formula of justice.”
 
 (Id.,
 
 at 11.)
 

 His early expression presaged the work of a great, realistic jurist, as he effectuated, in his many opinions, and further explained, in extrajudicial writings, the role of the Court, as an institution charged with the awesome responsibility of helping lawyers serve clients by providing firmly and clearly settled, adjudicated principles for the good of all society. Thus, in 1921, as part of the Storrs Lectures at Yale Law School, Judge Cardozo described how Judges and courts decide cases and he pertinently noted that “judge-made law is secondary and sub
 
 *303
 
 ordinate to the law that is made by legislators”
 
 (see,
 
 Cardozo, Nature of the Judicial Process, at 110 [Hall eds]).
 

 This tribunal itself early reflected that it should “authoritatively declare and settle the law uniformly throughout the state * * * not [only] that individual suitors might secure their rights, but that the law should be uniformly settled, to the end that the people might understand the principles which regulate[] their dealings and conduct and thus, if possible, avoid litigation”
 
 (Reed v McCord,
 
 160 NY 330, 335;
 
 see also,
 
 Karger, Powers of the New York Court of Appeals § 5 [3d ed]).
 

 To apply this vital guidance concerning the Court’s mission specifically, we note today that 10 years ago, this Court held that contracts for the sale of newly constructed homes carry an implied warranty that the construction was performed in a skillful manner and the building has no material defects
 
 (Caceci v Di Canio Constr. Corp.,
 
 72 NY2d, at 56,
 
 supra).
 
 Only months after
 
 Caceci,
 
 General Business Law article 36-B emerged. Section 777-a (1) of that article enacts that “a housing merchant implied warranty is implied in the contract or agreement for the sale of a new home.” Section 777-b (3) adds that “[a] housing merchant implied warranty may be excluded or modified by the builder or seller of a new home only if the buyer is offered a limited warranty in accordance with the provisions of this subdivision.”
 

 Although General Business Law article 36-B mentions the “housing merchant implied warranty,” we acknowledge that the enactment does not explicitly utter a legislative direction to supersede Caceci’s holding. To answer the question, therefore, whether the common-law remedy persists alongside General Business Law article 36-B, the Court must now look beyond the language of the statute. Our preeminent responsibility in that endeavor is to search for and effectuate the Legislature’s purpose
 
 (see, Matter of Scotto v Dinkins,
 
 85 NY2d 209, 214;
 
 Rankin v Shanker,
 
 23 NY2d 111, 114;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 91-92). In this respect, legislative history and the events associated with and occasioning the passage of the particular statute are valuable guiding lights
 
 (see, Matter of Sutka v Conners,
 
 73 NY2d 395, 403;
 
 Matter of Bowne v Bowne Co.,
 
 221 NY 28, 31;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 124).
 

 At the time this Court decided
 
 Caceci,
 
 the Legislature had been considering and negotiating the terms of General Business Law article 36-B. With the decision as a spur, the spon
 
 *304
 
 sors of the pending bill interjected the key phrase “housing merchant implied warranty” into the proposed measure (see, New York State Builders’ Assn, Inc, Letter to Governor’s Counsel, Bill Jacket, L 1988, ch 709, at 24). They also added definitions of “housing merchant,” “constructed in a skillful manner,” and “material defect” — critical terms used in
 
 Caceci (id.).
 
 The linguistic substitutes tracked
 
 Caceci,
 
 and replaced terms used in earlier bill drafts
 
 (id.).
 

 Caceci
 
 stands unmistakably, therefore, as the launch pad which directly shaped the substance, purpose, and enactment of General Business Law article 36-B. This foundation contributes much to our understanding and interpretation of the intended meaning and full reach of the ultimately enacted and approved statute. The words, timing, and their manifest effect demonstrate a legislative will and choice to displace the otherwise possibly uneven application of the boundaries of this important warranty protection, if it were to survive in two competing forms with overlapping sources producing case-by-case evolvement. The law-enacting branches wished to nail down the definitions of key phrases uttered in
 
 Caceci,
 
 to guide and govern the parties and industry, and to direct the courts to view the housing merchant warranties thereafter through the singular lens of General Business Law article 36-B. Indeed, it is virtually impossible to fathom how the common-law remedy would differ in definition, in practice, in pleading, and in specific remedial effectuation, if it were to remain viable coordinately with the statutory protection.
 

 The Bill Jacket materials include two memoranda presented for the Governor’s consideration, when he approved the bill to become law, that are also useful to the interpretative work of the courts. The documents also indicate that the statutory remedy was understood as a superseding codification of
 
 Caceci’s
 
 holding. The first, presented by the Attorney-General, states that “the bill
 
 confirms
 
 the recent New York Court of Appeals decision in
 
 Caceci”
 
 (Mem for Governor, Bill Jacket, L 1988, ch 709, at 15 [emphasis added]). It adds that “[t]his bill affords important legislative recognition, for the first time, of the existence of an implied ‘housing merchant’ quality warranty. Further, it defines the basic contours of this warranty”
 
 (id.).
 
 The use of the singular “an” and “this,” and the reference to defining “basic contours,” all help to suggest that the contemporaneous understanding of General Business Law article 36-B reflected a comprehensive warranty protection that would thereafter be governed by statute alone.
 

 
 *305
 
 The Executive Deputy Secretary of State also submitted a support memorandum from that consumer-sensitive and regulatory entity. It states that “[t]he bill is a legislative reaction to
 
 Caceci”
 
 and that it
 
 “also
 
 recognizes
 
 the
 
 housing merchant warranty” (Mem for Governor’s Counsel, Bill Jacket, L 1988, ch 709, at 18 [emphasis added]). This memorandum, like the Attorney-General’s, reflects an expectation of a statutory regimen providing definitive governance and direction to contracting parties and creating a uniform universe within which they could rely.
 

 A very important indicator of the Legislature’s intent to take charge of this issue exists — the statute itself. The enactment is an integrated, yet comprehensive set of components, found wholly within General Business Law §§ 777, 777-a, and 777-b. Overall, it reflects a realistic intent and effort to occupy the full field. For example, General Business Law § 777-a: (1) specifies different durations for the guarantee of skillful construction of various parts of a building, including the plumbing, electrical, heating, cooling, and ventilation systems; (2) excludes specified entities, and patent defects, from statutory remedy coverage; (3) identifies the scope of the protection with regard to goods sold incidentally with the dwelling, such as stoves, refrigerators, air conditioners, and so forth; and (4) describes the procedures needed to make a claim. General Business Law § 777-b likewise details the manner and the circumstances under which a builder-vendor may exclude the statutory remedy.
 

 Interestingly, as we have noted, section 777-b does not expressly mention exclusion of the common-law remedy. On the other hand, however, the presence of provisions for modification or exclusion of the statutory protection, combined with the absence of such authorization for exclusion of a common-law remedy, suggests that the Legislature was aware that its enactment of General Business Law article 36-B wholly supplanted the latter. Thus, no mention of authorization to contractually exclude a common-law remedy was made because none was needed. The statute did the whole job.
 

 Fumarelli’s argument for the coexistence of statutory and common-law remedies relies heavily on an axiom of statutory construction that suggests:
 

 “[t]he
 
 affirmative
 
 statute is merely declaratory and does not repeal the common law relating to the subject; on the contrary, the two rules coexist. In
 
 *306
 
 other words, where a remedy existed at common law for the wrong or injury against which a
 
 remedial
 
 statute is directed, if such statute * * * does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election” (McKinney’s Cons Laws of NY, Book 1, Statutes § 34 [citations omitted and emphasis added];
 
 see also, Schuster v City of New York,
 
 5 NY2d 75, 85).
 

 The applicability of this nostrum to the instant case dissolves on careful analysis.
 

 The canon has provided significant guidance
 
 (see, e.g., Schuster v City of New York, supra)
 
 and remains a useful tool of interpretation. Here, however, it would assume that General Business Law article 36-B is an “affirmative” or “remedial” statute. That begs, not aids, in answering the question in this case. An “affirmative” statute does not eliminate a preexisting right or remedy, but instead furnishes an additional remedy for enforcing the right
 
 (see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 34). A “remedial” statute provides a remedy where the common law either provides no remedy or provides an imperfect or ineffective remedy (see,
 
 Matter of Mlodozeniec v Worthington Corp.,
 
 9 AD2d 21, 23,
 
 affd
 
 8 NY2d 918,
 
 cert denied
 
 364 US 628;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 35).
 

 Similarly inapposite and unhelpful in this situation is the canon of construction instructing courts to strictly construe a statute when it is in derogation of the common law — a valuable, general guidepost
 
 (see, Rust v Reyer,
 
 91 NY2d 355, 360;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 304). Again, appellant’s proffered usage would, however, assume a key part of the answer to the question affecting the analysis of this case: that is, whether General Business Law article 36-B
 
 abrogates,
 
 or merely
 
 derogates,
 
 the common law. Precise meanings and usages are important. “Abrogation” means “the entire repeal and annulment of a law”; “derogation” relates to “[t]he partial repeal or abolishing of a law, as by a subsequent act which limits its scope or impairs its utility and force” (Black’s Law Dictionary 399 [5th ed]). If General Business Law article 36-B fits the former definition, as we believe it does, then, the canon of strict construction loses its abstract instructive value, as applied here.
 

 
 *307
 
 In sum in this regard, the Court need not resort to overly general and self-canceling canons of construction advocated by appellant Fumarelli because the legislative intent is otherwise more readily and reliably manifest. This is especially pertinent since the cogent documentary legislative history associated with the enactment of General Business Law article 36-B, the circumstances of its passage, and its detailed, integrated comprehensiveness provide a supportable basis for the judicial discernment of the Legislature’s goal. The Court need not follow ambidextrous canons — often generally useful — when it can avail itself of more pertinent indicia of the legislative purpose
 
 (see, Matter of Bath & Hammondsport R. R. Co. v New York State Dept. of Envtl. Conservation,
 
 73 NY2d 434, 441;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 91-92).
 

 The history, timing, wording, and breadth of the statutory enactment all indicate that the Legislature did not intend an overlapping dual track that would engender confusion, indefiniteness, and lawsuits. The other two branches of government nicely and appropriately complemented the judicial branch work. The traditional lawmaking branches sought to fill the field comprehensively with a uniform directory framework that would provide predictability concerning these matters, as sorted out and agreed to among contracting parties themselves.
 

 The narrow contractual basis for affirmance is subsumed within this more comprehensive rationale. Nevertheless, we note that we also agree with the Appellate Division that the limited express warranty contained in the purchase agreement between Fumarelli and Marsam Development shows that they, in any event, agreed to exclude all warranties other than those expressly agreed to within their purchase agreement.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.