OPINION OF THE COURT
John B. Nesbitt, J.
I. Introduction
Both plaintiffs and defendant move for pretrial relief requiring determination whether the statutory warranties attaching *737 to sales of new homes apply where no transfer of real estate accompanies home purchase; that is, where the home is constructed on land already owned by the buyer. This court finds that the transfer of the underlying real estate as an incident of home purchase is not dispositive whether the statutory warranties apply. Notwithstanding this determination, the court finds issues of fact precluding granting either of the pending motions.
II. Facts: Disputed and Undisputed
Plaintiffs, Thomas and Stephanie Gorsky (plaintiffs or Gor-skys), bring suit against the defendant, Triou’s Custom Homes, Inc. (defendant or Triou), for money damages alleging breach of a construction contract. Certain basic facts are undisputed. In 1997, plaintiffs owned unimproved real property adjacent to County Line Road in the Town of Walworth, Wayne County. In April of that year, the plaintiffs and defendant Triou entered into a written contract for defendant to construct a single-family home on plaintiffs’ property for the sum of $85,200. That contract obligated the defendant to provide labor and materials necessary for such construction in accordance with certain plans and specifications. Those plans stipulated the type of roof and its materials, including specific shingles of a particular manufacturer — Owens Corning Roofing, fiberglass, grade 235. The contract further stated that any changes in the plans required a written change order signed by both the plaintiffs and the defendant. The contract also provided that the defendant would “deliver those warranties given under Article 36-B of the General Business Law except as may be contained herein.” The defendant constructed the home in 1997 on plaintiffs’ property and was paid in accordance with the contract. The defendant did not install the Owens Corning shingles as stipulated in the written contract. Rather, defendant installed shingles manufactured by the Tampko Company.
The facts in dispute are equally straightforward. Plaintiffs allege that after the completion of the home problems began developing with the roofing shingles, resulting in some shingles being blown off the roof. They further allege that they contacted the defendant, who refused to address the situation. Upon investigation, the plaintiffs discovered that the shingles installed were not of Owens Corning manufacture, but that of the Tampko Company. They contacted the Tampko Company, which acknowledged that the shingles were defective and refunded plaintiffs the purchase price paid by the defendant. *738 Refund of the shingles’ purchase price would not cover installation of a new roof. Plaintiffs seek compensation from the defendant representing the cost of a new roof less the sum reimbursed by the Tampko Company.
Defendant Triou alleges that while Owens Corning shingles were stipulated in the contract “as originally contemplated,” that requirement was “modified” by agreement of the parties “with respect to the type of roofing shingles to be installed by the [djefendant.” Triou alleges that the Tampko shingles used “were of comparable quality to the Owens Corning shingles called for in the agreement.” He also alleges that he received no written notice of any alleged shingle defect until he received a letter from plaintiffs’ attorneys in October 2001.[1] Further, defendant states that plaintiffs have alleged that the shingles began to fall in early 2001, almost four years after contract completion.
This action commenced in June 2002. In their complaint, plaintiffs assert a single cause of action for money damages for breach of contract resulting not only from the defendant’s unauthorized deviation from the contract specifications to install a particular manufacture and type of roofing shingles, but also the defective nature of the shingles installed regardless of the source of manufacture. The defendant interposed an answer that denied the contract breach, and asserted four affirmative defenses. One of those defenses asserted that plaintiffs’ action was barred for failure to comply with the requirements of article 36-B of the General Business Law, entitled “Warranties on Sales of New Homes.”[2] Specifically, defendant’s affirmative defense alleges that the defect complained of did not arise within the statutory one-year warranty period pertaining to nonmaterial defects due to a failure to construct “in a skillful *739 manner (General Business Law § 777-a [l]).”[3] As such, defendant alleges that the complaint fails to state a viable cause of action.
Plaintiffs now move to strike defendant’s affirmative defense based upon article 36-B of the General Business Law. They assert that, as a matter of law, the statute has no application to their case because no transfer of real property was involved in the parties’ transaction, a statutory reading not only disputed by the defendant, but the contrary providing the basis of defendant’s cross motion for summary judgment dismissing the complaint. The threshold issue for this court is to determine what, if any, application General Business Law article 36-B has to this case.
III. The Statutory New Home Warranty Law: History and Overview
It has long been cemented in the common law of contracts that, “[a]s a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner” (17 Am Jur 2d, Contracts § 627 [1964]). This general rule also has been long understood to apply to housing construction contracts. In Caceci v Di Canio Constr. Corp. (72 NY2d 52, 58 [1988]), a significant case in the history of the statutory new home warranty, a unanimous Court of Appeals speaking through Judge Bellacosa found both seminal and instructive Lutz v Bayberry Huntington (148 NYS2d 762 [Sup Ct, NY County 1956, Christ, J.]), where the home purchaser sought to recover damages because the house constructed for him by the defendant builder was defective. Justice Christ in that decision recognized for repleading purposes that the plaintiff’s cause of action was based upon an implied promise that the house would be constructed in a good and skillful manner:
“It is well established that every contract implies good faith and fair dealing between the parties. A corollary of this principle is the doctrine that in every contract there is an implied covenant that *740 neither party will do anything having the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Thus, there was an implied term of the agreement here that the house would be constructed in a good and workmanlike manner * * * ” (id. at 768 [citations omitted]).
In this context, with the covenant of good and skillful construction being implied into the parties’ contract, the remedy for its breach is an action upon the contract. In New York, absent agreement to the contrary, the applicable limitations period for contract actions is six years from the date of breach (CPLR 213 [2]).
The law of contracts engages the law of real property in cases where title to real estate is transferred with the house.
“Traditionally, once the buyer accepted the deed, he absolved the vendor of all duties under the sales contract. Under the merger doctrine, all contract obligations ‘merged’ into the deed when the seller delivered it to the buyer. If the vendor intended to fulfill additional obligations, the parties had to list the obligations in the deed” (McDaniel, The New York Housing Merchant Warranty Statute: Analysis and Proposals, 75 Cornell L Rev 754, 756 [1990]).
The effect of the merger doctrine was to extinguish claims based upon defective home construction once the buyer accepted title to the underlying real estate. Consequently, because of the perceived unfairness and inequity of this result, the merger doctrine, at least in the context of new residential home sales, had long been under frontal attack by the legal academy and incremental erosion by the courts when the Court of Appeals decided Caceci (72 NY2d 52).
In Caceci, the Court placed its imprimatur upon a rule that in a home construction contract, “there is an implied term in the express contract between builder-vendor and purchasers that the house to be constructed would be done in a skillful manner free from material defects” (72 NY2d at 56). This alone would have broken no new ground, but the Court went on to hold that the merger doctrine applicable upon transfer of title, whether derived from the parties’ contract or otherwise by operation of law, would not extinguish the implied warranty (id. at 56-57). This was central to the case, because the plaintiffs’ contract with the builder called not only for home construction but conveyance of the underlying real property *741 upon which the home was built. “To hold, in a case such as this, that the closing itself, the very act which triggers the claim, also served to extinguish it is self-contradictory, illusory and against public policy” (id.).
Less than two months after the Court of Appeals decided Caceci, the State Legislature enacted and the Governor signed into law what is now codified as article 36-B of the General Business Law, and known as the new home warranty law. Prior to the Caceci decision, proposed laws on new home warranties had been under consideration by the Legislature for several years. The Caceci decision spurred the Legislature to enact a law to address uncertainties left in Caceci’s wake, as well as comprehensively address the subject of new home warranties. It did so by defining certain operative terms used by the Court of Appeals in Caceci, such as “housing merchant,” “constructed in a skillful manner,” and “material defect.” It also went beyond Caceci by imposing a detailed three-part housing merchant warranty by operation of law in all contracts for sales of new homes, with specific time-limited warranty periods applicable to each warranty, in addition to any express warranties the builder may give. These implied warranties are that:
“a. one year from and after the warranty date the home will be free from defects due to a failure to have been constructed in a skillful manner;
“b. two years from and after the warranty date the plumbing, electrical, heating, cooling and ventilation systems of the home will be free from defects due to a failure by the builder to have installed such systems in a skillful manner; and “c. six years from and after the warranty date the home will be free from material defects.” (See General Business Law § 777-a [1].)
The statute imposes a notice requirement as a condition precedent to a buyer’s right to commence suit for breach of these warranties, as well as a specific statute of limitations applicable to actions for implied warranty breach. The notice requirement dictates that a claim of breach of warranty be in writing and received by the builder no later than 30 days after the expiration of the applicable warranty period (see General Business Law § 777-a [4] [a]). Suit must be brought within one year after expiration of the warranty period or within four years after the start of the warranty period, whichever is later (see General Business Law § 777-a [4] [b]).
*742 After Caceci and enactment of General Business Law article 36-B in 1988, commentators speculated whether the common-law implied warranty recognized in Caceci survived the statutory enactment (see e.g. Spector and Dannenberg, Developers’ Liability: New York’s Implied Warranty in Contracts for the Sale of New Homes, 61 NY St BJ 32, 38 [Nov. 1989]). Such speculation was of academic interest for some years, inasmuch as unhappy home buyers apparently relied upon the statutory warranties rather than the common-law warranty (see Spencer, Law Found To Repeal Appeals Court Ruling: Housing Merchant Implied Warranty At Issue, NYLJ, Oct. 21, 1998, at 1, col 3). Yet, it became and remains clear that the courts will enforce the notice requirement as a condition precedent to suit and the abbreviated statute of limitations applicable to statutory new home warranty claims and dismiss actions failing compliance with either or both (see, e.g. Taggart v Martano, 282 AD2d 521 [2d Dept 2001]; Rushford v Facteau, 247 AD2d 785 [3d Dept 1998]). As such, it became inevitable that the case would arise where a buyer unable to establish compliance with the notice or statute of limitations requirements of the statutory new home warranty would seek a basis for a remedy outside of the statute. That case was Fumarelli v Marsam Dev. (92 NY2d 298 [1998]).
In Fumarelli, more than a year after transfer of title, the plaintiff home buyer discovered defects in the sprinkler system master pump, as well as in a bathroom drain, handrail, and plumbing fixture. The plaintiff failed to comply with the condition precedent to suit under the limited warranty given by the builder under General Business Law § 777-a (Fumarelli, 238 AD2d 470, 471).
Nevertheless, Supreme Court denied dismissal of the cause of action for breach of contract based upon the common-law implied warranty recognized in Caceci and the Appellate Division affirmed (id.). The Court of Appeals reversed in an opinion authored by Judge Bellacosa, who had written Caceci 10 years earlier.
Judge Bellacosa, speaking for a unanimous Court, held that “General Business Law article 36-B is a full, effective, and realistic substitute for the protections and rationale recognized” in Caceci and effected a complete displacement of the common-law implied warranty in cases where the statute is applicable (92 NY2d at 302, 304-305). The Court reasoned that the Legislature was seeking uniformity and did not intend for the common-law warranty to survive as a competing remedy. “The *743 history, timing, wording, and breadth of the statutory enactment all indicate that the Legislature did not intend an overlapping dual track that would engender confusion, indefiniteness, and lawsuits” (id. at 307).
IV. Watt v Irish'. Transfer of Real Estate Title as a Condition To Applicability of Statutory New Home Warranties
The Court of Appeals decision in Fumarelli established that there is no separate implied common-law warranty applicable in circumstances where the statutory warranties obtain. If a homeowner fails to meet the statutory requirements of timely notice of breach and timely commencement of an action to enforce his warranty rights, he cannot resort to an action based on the implied common-law warranty. However, if a homeowner can demonstrate that the statutory new home warranties do not apply to his contract with the home builder or seller, then Fumarelli is inapposite, and the common-law implied warranty recognized in Caceci may nevertheless apply.[4] This is precisely the argument the plaintiffs make in this case in support of their motion to strike defendant’s affirmative defense based upon plaintiffs’ failure to give timely notice of warranty breach and failure to commence this action within the abbreviated limitations period set forth in section 777-a of the General Business Law.
Plaintiffs argue that the statutory new home warranties do not apply to this case, because the parties’ transaction did not involve the sale and passing of title to real estate; consequently, their action is unaffected by the notice of claim and statute of limitations provisions of General Business Law § 777-a. Rather, their action is governed by CPLR 213, which provides a six-year statute of limitations for a cause of action for breach of contract in cases other than those governed by General Business Law § 777-a. They rely upon Watt v Irish (184 Misc 2d 413 [Sup Ct, Columbia County 2000, Cannizzaro, J.]).
In Watt v Irish, the plaintiffs contracted with the defendant builder for construction of a new home on land the plaintiffs al *744 ready owned. After the home was completed, the plaintiffs took up residency, and discovered problems with the construction. They sued the builder approximately 5V2 years after completion of construction, claiming that the builder breached the contract by constructing their home in a negligent manner. As in the present case, the defendant builder moved for summary judgment dismissing the complaint, arguing that plaintiffs’ cause of action was barred by the two-year limitations period set forth in General Business Law § 777-a, as well as their failure to provide the defendant with timely written notice of breach of statutory warranty required as a condition precedent to an action under that law. And also as in the present case, the plaintiffs opposed the motion, contending that new housing implied warranty statute did not apply, because their action concerned the construction of a new home on land the plaintiffs owned at the time of the construction contract. Hence, neither statutory written notice of claim requirement nor the abbreviated two-year limitations period applied to bar plaintiffs’ action.
The court in Watt agreed with the plaintiff homeowners, finding that the new home warranty statute “only applies to contracts or agreements that involve the sale of new homes,” not merely construction of new homes on land already titled to the owner (184 Misc 2d at 414-415 [emphasis added]). The court employed two decisional devices to reach that conclusion. First, it looked at the history of the statute in the context of the decisional law both before and after its enactment. The Court of Appeals decision in Caceci, which preceded and spurred the statute’s enactment, described a claim based upon implied warranty breach as “only arising] at closing of title when the builder-vendor conveyed a house which suffered from latent material defects” (id. at 415, quoting Caceci, 72 NY2d at 56). After the statute’s enactment, the Court of Appeals referred to the law not only as a “codification” of Caceci (Matter of Roberts Real Estate v New York Dept. of State, Div. of Licensing Servs., 80 NY2d 116, 122 [1992]), but a complete “substitute” for the implied warranty recognized in Caceci (Fumarelli v Marsam Dev., 92 NY2d at 302). Accordingly, the court in Watt implied, the statute was intended to reach no further than the situation specifically addressed in Caceci — application of the doctrine of merger to extinguish any implied warranty upon passing of title at closing.
Secondly, the court in Watt found the language of the statute supporting its reading of statutory intent. The statute directs *745 that “a housing merchant implied warranty is implied in the contract or agreement for the sale of a new home and shall survive the passing of title.” (General Business Law § 777-a [1] [emphasis added].) It refers to the beneficiary of the warranty as the “owner,” defined as “the first person to whom the home is sold and, during the unexpired portion of the warranty period, each successor in title to the home and any mortgagee in possession” (General Business Law § 777 [6] [emphasis added]). And finally, the statute defines “warranty date,” the date the warranty period begins, as the “date of the passing of title to the first owner for occupancy by such owner or such owner’s family as a residence, or the date of first occupancy of the home as a residence, whichever first occurs” (General Business Law § 777 [8]).
The court concluded that “the housing merchant implied warranty statute * * * only applies to contracts or agreements for the sale of new homes,” which requires “a sale and passing of title” (184 Misc 2d at 414-415, citing Caceci, supra; Roberts, supra; Fumarelli, supra; Chan v Rose Constr. Corp., 211 AD2d 872 [3d Dept 1995]; Pitcherello v Moray Homes, 150 AD2d 860 [3d Dept 1989]).[5] That not being the case where the new home is constructed on land already titled to the homeowner, the statute does not apply, and any contractually derived claim is unimpaired by the statutory notice and statute of limitations provisions.
If Watt is to be followed by this court as contended by plaintiffs, then their motion to strike the defendant’s affirmative defense based upon plaintiffs’ failure to abide the notice of defect and statute of limitations provisions of the new home warranty law must as a matter of law be granted. For the reasons that follow, this court declines to adopt Watt.
V. Applicability of Statutory New Home Warranties to Custom Homes[6]
Justice Brandéis once observed, “in most matters it is more important that the applicable rule of law be settled than that
*746 it be settled right” (Burnet v Coronado Oil & Gas Co., 285 US 393, 406 [1932, Brandéis, J., dissenting]; see Richard Posner, Frontiers of Legal Theory, at 219-220 [2001]). As such, any judge should proceed thoughtfully and cautiously before he or she causes a split of authority or uncertainty on a point of law. Justice Cannizzaro’s opinion in Watt v Irish (supra) is well written, and clearly and cogently reasoned. But because this court respectfully disagrees with the premises that underlay the logic of that decision, and because of the importance of the issue to the home building industry, it ventures a different analysis and consequently a conclusion contrary to that reached in Watt. If this court is wrong, then it will take solace in the fact that the greatness of the law, as sportswriter Red Smith once said about professional baseball, lies in the fact that it survives the people who run it.
At the outset, we start with a legal tradition that has long recognized that statutes represent “the express written will of the legislature” and courts must apply them as the Legislature intended (1 Kent, Commentaries on American Law, at 419, 431-432 [1826]). In ascertaining that intent, it is well established that there is “no more persuasive evidence * * * than the words by which the legislature undertook to give expression to its wishes” (United States v American Trucking Assns., 310 US 534, 543 [1940]). The core directive of General Business Law article 36-B is found in section 777-a (1), stating that “a housing merchant implied warranty is implied in the contractor agreement for the sale of a new home and shall survive the passing of title.” Without dispute, the defendant in this case constructed a “new home” pursuant to agreement with the plaintiffs. But did it constitute a “sale” within the meaning of the statute, and is the “passing of title” required before the warranty will be implied? These terms are not defined in the statute.
Taking this language of legislative command in isolation, a reasonable argument may be made that when one contracts with another to build a home on land he already owns, common parlance would not usually characterize the transaction *747 as a purchase and sale.[7] One would say that he is having a home built rather than purchased. Also, there is no passing of title in the usual sense of delivery of an instrument of conveyance at closing. The addition of a house is an improvement to real estate, which, by operation of law absent agreement to the contrary, becomes the property of the landowner as an incident to the title he already enjoys (1 Rasch, Real Property Law and Practice § 18 [1962]).
Such a narrow interpretation of the statute is unwarranted for several reasons. First, courts should construe a statute “as a whole, and all parts of an act are to be read and construed together to determine the legislative intent” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97). The statute does not explicitly state who is an implied warrantor and who may enforce the implied warranty. The identity of at least one implied warrantor may be inferred from General Business Law § 777-a (4) (a), which states that written notice of a warranty breach must be given to the “builder,” who is then afforded a specified period to effect repairs. In addition, General Business Law § 777-b (2) and (4) (g) state how a “builder or seller of a new home” may limit warranties in the “written contract or agreement of sale,” in which event the agreement must state “what the builder and any other warrantor will do when a defect covered by the warranty does arise, and the time within which the builder and any other warrantor will act.” The term “builder” is defined in General Business Law § 777 (1) as “any person, corporation, partnership or other entity contracting with an owner for the construction or sale of a new home.”
The definition of “builder” is not keyed to who owns the land where the new home is to be built, or to whether any passing of real estate title is required as part of the transaction.[8] Indeed, after passage in the State Legislature of the bill that *748 would become General Business Law article 36-B, the New York State Builders’ Association, one of the prime supporters of the proposed law and actively involved in the drafting and negotiations leading up to its passage, wrote a letter to the Governor’s Counsel outlining its support and understanding of the proposed law. That letter became part of the Bill Jacket and was later referred to by the Court of Appeals in Fumarelli (92 NY2d at 303-304). The letter stated as follows regarding the statutory definition of a builder subject to the law:
“[SJection 777 defines ‘builder’ as an entity contracting with an owner for the construction or sale of a new home. Under the bill, it will not matter whether the contract is entered into prior to, during or after construction (a question which has provided some difficulty in the court cases). One who enters into a contract merely to construct is a builder, even though he does not sell the home (for example, a contract vendor who will build on land owned by the vendee), and one who enters into a contract merely to sell a new home is also a builder (for example, the vendor of an existing, completed model home). One who contracts for both construction and sale is also a builder, of course” (New York State Builders’ Assn., Inc. letter to Governor’s Counsel, Bill Jacket, L 1988, ch 709, at 27).[9]
This description made part of the legislative record indicates that application of the statute was not intended to hinge on whether the owner of the new home acquired title to the land prior to contracting for construction or becomes the owner thereafter.
Secondly, this result should not be altered by the fact that General Business Law article 36-B refers to the “passing of *749 title” in terms of the implied warranty not being extinguished thereby. As the legislative history makes clear, the statute was designed both to recognize an implied warranty regarding new homes, and prevent the common-law doctrine of merger from extinguishing it in cases where the transaction involved the conveyance of real estate. By addressing the latter, the Legislature did not by implication foreclose the former in cases where real estate was not transferred. Again, the legislative history of General Business Law article 36-B is instructive. Its sponsor in the State Senate, then Senator L. Paul Kehoe, in his memorandum in support of legislation on Senate Bill S 5395, justified the proposed legislation as follows:
“The purchase of a new home is the largest single purchase many consumers will ever make. It is, therefore, unfair, unjust and inequitable to have no implied warranties on these homes. It is in the interest of the people of the State as a whole that new home construction meet certain standards. The protection of the warranties contained in this bill will * * * promote public confidence in the home builders trade.” (Bill Jacket, L 1988, ch 709.)
There is nothing in this or any other part of the legislative record to indicate that it was relevant to the legislative intent to create such implied warranties whether the land under a new home was acquired by the consumer before or after home construction. Indeed, in the Assembly’s memorandum in support of legislation accompanying its counterpart to the Senate bill, it noted that the proposed law “deals with warranties as to the construction of * * * dwelling[s],” independent of covenants that attach to real estate transfers. (Bill Jacket, L 1988, ch 709.)
Thirdly, it is also a well-settled canon of statutory construction that a law should not be construed to produce absurd results at odds with the legislative purpose (see Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed, 3 Vand L Rev 395, 403 [1950]). The intended beneficiary of the implied warranty is ostensibly the “owner” of the new home, who is defined as “the first person to whom the home is sold and, during the unexpired portion of the warranty period, each successor in title to the new home and any mortgagee in possession.” (General Business Law § 777 [6].) If the plaintiffs in this case or those like them who contract with a builder to construct a home on land they already own are not considered the first owners for purposes of the statute, then perforce the first own *750 ers would, be those to whom they eventually sell their property. This may be years away, yet both the plaintiffs and the defendant may be bound to honor the implied new home warranty with respect to these subsequent owners merely because the passage of title marked the first “sale,” notwithstanding that the home is then years old. And it would be equally strange in such situation to affix the “warranty date,” the date of commencement of the implied warranty, in accordance with the statutory definition of “the passing of title to the first owner for occupancy by such owner or such owner’s family as a residence, or the date of the first occupancy of the home as a residence, which ever first occurs.” (General Business Law § 777 [8].) In that case, neither the plaintiffs nor any subsequent buyers would enjoy any rights under the statute, unless those buyers acquired title within the warranty period commencing with plaintiffs’ occupancy. In the later case, the buyers could enforce the warranty during its unexpired term to remedy a defect, whereas the plaintiffs would not have been able to do so during the period of their ownership and occupancy regarding the same defect.
Finally, as Judge Bellacosa once observed in the area of statutory construction, “important legislative prerogatives should not be so unnecessarily sacrificed or facilely transferred to the unilateral disposal of the regulatee” (Matter of Pokoik v Department of Health Servs., 72 NY2d 708, 719 [Bellacosa, J., dissenting]). Developers and builders should not be able to determine whether new home buyers are afforded the benefits of the implied warranty protections of General Business Law article 36-B by manipulating whether there is a “sale” or a “passing of title.” While the statute’s components (operative and definitional) may in places join with less than seamless coherence, the purposes of the law are sufficiently clear to permit an interpretation that allows the statute to be applied consistent with legislative intent and purpose.
VI. Conclusion
The statutory new home implied warranties imposed by article 36-B of the General Business Law apply to custom homes and protect purchasers of such homes regardless of the fact that they own the real property upon which such homes are constructed prior to the homes being built. If a homeowner fails to comply with the statutory requirements for assertion of his rights under the statutory implied warranty, he has no cause of action for breach of contract based upon the builder’s
*751 or seller’s implied obligation of merchantability. Thus, to the extent that plaintiffs’ cause of action is based upon defective workmanship and materials predicating a claim that the home was not “constructed in a skillful manner” as defined in General Business Law § 777 (3), the plaintiffs’ failure to abide the statutory notice and limitations period would bar the action. However, plaintiffs also assert that the defendant breached the express provision of their contract regarding the manufacturer and type of shingles to be installed (compare Fumarelli v Mar-sam Dev., 238 AD2d 470, 471 [2d Dept 1997], affd 92 NY2d 298 [1998]). This claim is one that is not encompassed within the statutory new home warranty law, and would not be barred by the written notice and abbreviated limitations period applicable to most statutory implied warranty claims. The six-year statute of limitations set forth in CPLR 213 (2) therefore governs, absent agreement to the contrary, which is not alleged in this case. As such, this action was timely commenced. Further, it cannot be said upon the record now before the court that, as a matter of law, the alleged substitution of shingles of a different manufacturer did not constitute an actionable breach of contract, or that plaintiffs did not suffer compensable damages as a result thereof (see Jacob & Youngs v Kent, 230 NY 239 [1921]).
Accordingly, the motion of the plaintiffs to strike the affirmative defense of defendant grounded upon article 36-B of the General Business Law is denied as to that portion of the complaint as may be read to assert a breach of implied warranty of good workmanship and materials. The motion of the defendant for summary judgment dismissing the complaint is likewise denied, inasmuch as issues of fact exist whether an express provision of the contract was breached and, if so, whether the plaintiffs suffered compensable damages as a result.

. That letter alleges that the defendant did replace the shingles that were blown off the roof due to their “defective nature” but refused to replace the entire roof with proper shingles.

. The law is sometimes referred to in academic publications as the housing merchant warranty statute (see e.g. McDaniel, The New York Housing Merchant Warranty Statute: Analysis and Proposals, 75 Cornell L Rev 754 [1990]), in judicial opinions as the housing merchant implied warranty statute (see e.g. Watt v Irish, 184 Misc 2d 413 [Sup Ct, Columbia County 2000]), and in the industry and by practitioners as the new home warranty law (see e.g. New York State Builders’ Assn., Inc., Builder’s Guide to New Home Warranties in New York State [5th ed 1999]). For purposes of this opinion, the simpler industry usage is adopted.

. In general, the statutory implied warranty is for one year with respect to the home generally, two years in the case of major systems, and six years with respect to certain defects in load-bearing portions of the home that make it unsafe or unliveable (see General Business Law § 777-a). The alleged shingle defect in this case would fall under the one-year warranty, not being a major system (plumbing, electrical, heating, cooling, or ventilation) defect as defined in section 777 (7) or a “material” (“load-bearing”) defect as defined in section 777 (4).

. In fact, it is an open question whether the Court intended “its Fu-marelli holding to strip common law protection from transactions to which Article 36-B does not expressly apply” (Baily and Desiderio, Are Buyers of New Condos and Co-ops Subject to Caveat Emptor?, NYLJ, Sept. 6, 2001, at 4, col 4). Because this court holds that the statute does apply in this case, it is unnecessary to reach this issue.

. Neither Chan nor Pitcherello involved General Business Law article 36-B.

. The term “custom home” does not appear in General Business Law article 36-B. It is used in article 36-A, entitled “Home Improvement Contracts,” and as defined, is descriptive of the construction involved in the present case: “custom home” means “a new single family residence to be constructed on premises owned of record by the purchaser at the time of the contract, provided that such residence is intended for residential occupancy by such purchaser” (General Business Law § 770 [7]). A custom home is generally a class of “new home” as defined in article 36-B (General Busi *746 ness Law § 777 [5]). Article 36-A does not direct any express or implied warranties for such construction, but states that “[njothing in this article shall impair, limit, or reduce the statutory, common law or contractual duties or liability of any contractor” (General Business Law § 772 [2]).

. But cf. Spector and Dannenberg, Developers’ Liability: New York’s Implied Warranty in Contracts for the Sale of New Homes, 62 NY St BJ 32, 33 (Nov. 1989) (noting that as the result of the mass-production arising in the housing industry following World War II, “the purchaser of a new home was increasingly compared to the buyer of goods”); General Business Law § 770 (7) (defining “custom home” as a new single residence to be constructed on premises owned of record by the purchaser).

. A builder is in the best position to prevent defects, and accordingly the responsibility for such defects, “as a matter of sound contract principles, policy, and fairness,” should be borne by “the party best able to prevent and bear the loss” (Caceci, 72 NY2d at 59-60). The reliance by a homeowner upon his builder is no less when the homeowner owns the land at the time of construction or acquires it after. Indeed, much of General Business Law article 36-B was drafted to make the implied warranty obligations an insur *748 able risk for builders in accordance with the building industry’s voluntary warranty insurance program administered by the Home Owners Warranty Corporation (New York State Builders’ Assn., Inc. letter to Governor’s Counsel, at 3, Bill Jacket, L 1988, ch 709; New York State Builders’ Assn., Inc., Builder’s Guide to New Home Warranties in New York State, at 6 [5th ed 1999]). These home warranty policies have been available to builders regardless when the customer acquires title to the underlying real estate.

. The State Builders’ Association continues to adhere to this position: “Those who contract to construct or sell are builders. It does not matter whether, at the time of the contract, the new home has been constructed, is being constructed, or has been constructed. It does not matter whether the home is or will be located on the buyer’s or the seller’s land (New York State Builders’ Assn., Inc., Builder’s Guide to New Home Warranties in New York State, at 12 [5th ed 1999]).