Matter of Coordinated Tit. Ins. Cases (2004 NY Slip Op 50338(U))

[*1]

Matter of Coordinated Tit. Ins. Cases

2004 NY Slip Op 50338(U)

Decided on April 15, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 15, 2004

Supreme Court, Nassau County
In the Matter of COORDINATED TITLE INSURANCE CASES.
INDEX NO. 009600/2003

IRA B. WARSHAWSKY, J.
This motion by The Title Insurance Rate Association Inc., (TIRSA), a non-party to the action for an order pursuant to CPLR §§ 2304 & 3103 quashing a subpoena dated February 18, 2004, served by plaintiff is determined as follows.
TIRSA moves to quash the subpoena on four grounds: the subpoena is defective pursuant to CPLR § 3101(a)(4) since it does not state the reason disclosure is sought; plaintiffs have not enunciated special circumstances for discovery of a non-party; the discovery requested is not material and necessary; the disclosure is protected by the privilege accorded material relating to the "deliberative process" pursuant to CPLR § 3101(b)
This matter has been certified as a class action against eight title insurance companies on the basis of their failure to adhere to notice and rate charging provisions pursuant to sections one and fourteen of the TIRSA Rate Manual effective September 1, 1993. Pursuant to that manual defendants are directed to charge a reduced premium in certain very specific instances involving either a refinance or a reissuance of a title insurance policy.
Ambiguity, Vagueness, Problems with Interpretation and Application, Meaning, are the words often repeated by defendants relative to obedience to sections 1 and 14 of the Rate Manual. Seemingly there were instances when the reduced premium was not charged, although the circumstances necessary for justification of a reduced rate were present.
 This matter has been the subject of two other orders of this court and familiarity with the facts is presumed. The additional facts of relevance in analyzing whether to uphold or quash the subpoena served on TIRSA is the position it plays in this niche of the heavily regulated insurance industry.
 In very simple terms, because that is all that is needed, defendants only underwrite policies that insure title to real property. The policy may be in favor of the lender or the purchaser. In all cases it protects against potential financial loss due to a defect in title or an encumbrance on the property. Like all insurers they are subject to the supervision of the State Insurance Department and the Superintendent thereof. The liaison between the two is TIRSA who is licensed by the State as a rating bureau, or rate service organization, (Ins L §§ 2306 and 2313) and whose eighteen members are from the title insurance industry. TIRSA's mandate is to gather statistical information and recommend premiums, and through the group to propose policy forms and endorsement forms to the Superintendent of Insurance who will accept or reject the proposals. The system is comprehensibly set out in Article 23 of the Insurance Law. TIRSA serves in an advisory capacity and is designated as the Insurance Department's statistical agent. Title insurers must report statistics to TIRSA, and TIRSA is to maintain statistics that track losses as well as expenses, segregated on an industry aggregate as well as individual insurer basis. NYSID Title Ins. Memo Decision at p. 9.
 Of particular interest is Ins. L § 2305 (b) & (c) which provides that rate filings shall be submitted to the superintendent with the information upon which the insurer or the rate service organization supports the rate. Upon the rate being accepted by the supervisor and becoming effective, the rate filing and supporting information shall be "open to public inspection."
 It is here necessary to revisit yet again the recurring and distinctive theme running [*2]through the entire record compiled heretofore; ambiguous, vague, difficult to interpret and apply. These are defendants words to describe the reduced notice and rates offered on refinances and reissues as set forth in section 14 of the governing TIRSA Rate Manual. But here also, a cautionary word. The reader should not conclude that the court does or does not find it so. The issue before the court now is relevance of the subpoena to the issues in this case. See, Farbman v NYC Health & Hospitals, 62 N.Y.2d 75 (1984) (comparing the unfettered discovery of governmental agencies under FOIL with the limitation of CPLR article 31 to discovery of material that is "material and necessary.").
 It is argued, inter alia, the terms are ambiguous; who is the "YOU" to receive the discounted rate, what is an improved or unchanged property? Where is the guidance to interpret and apply the confusing terms as to which, the borrower or the lender or either, will get notice and how? What were the defendants to do with the section as written as there no industry standard or practice for sending out an "applicant confirmation" and how then does "YOU" get notice? The vagueness of section 1 and 14 caused by this omission makes section 14 troubling although the industry maintains its commitment as before to a reduced premium where virtually the same title has been recently insured. How can the insurer be held liable for not charging the correct rate when it does not send out the notice to the borrower and knows little or nothing about their prior loan history? ("It will also be relevant to the question of scienter whether it was possible to send the Section 14 Notice to the borrower before the closing.") What also is an "identical premises" or unchanged ownership? Finally, defendants announced before the Litigation Coordination panel that TIRSA will undoubtedly be a key non-party witness, but here it is claimed that TIRSA "does not provide interpretation of Rate Manual terms" and, therefore, the subpoena seeks information that is a priori irrelevant.
Before turning to the text of the subpoena, it is well to establish a frame work for resolving the kind of problems listed above. Defendants propose that it is hard to know, and therefore practice, what the Rate Manual means. Who then can plaintiff question on what the Rate Manual means? When a law or statute or government enactment or regulation is susceptible of different meanings we go to the legislative history, to the governor's message to the legislature, to the deliberations in committee, to the drafts of the original bill, to the publication offered for public comment. The cases are legion in so holding. Fumarelli v Marsan, 92 NY2d 298 (1998).
So it must be here. TIRSA prepared the Rate Manual in issue and offered it to the Superintendent for approval, with supporting information which was then to be made public. Anything that involved preparation of the allegedly oblique document to which defendants are bound and which has affected plaintiffs and the home buying public is, then, relevant to resolving the issues in this lawsuit. And, the fact that defendants have properly segregated their membership in TIRSA from their role at litigants, satisfies the plaintiffs' duty to show special circumstances to acquire information on the rate manual from a non-party. Cirale v 80 Pine St. Corp., 35 N.Y.2d 113 (1974).
In keeping with the principles enunciated above TIRSA shall respond to the following items requested in the subpoena:
(2) the drafting, adoption or interpretation of §§ 1 and 14 of the TIRSA Rate Manual;
(3) any adopted amendment(s) to §§ 1 and 14 of the TIRSA Rate Manual;
(4) past or current title insurance industry standards, policies, practices or procedures concerning §§ 1 and 14 of the TIRSA Rate Manual; and
(7) to the extent not produced in response to categories (2) (4) (6) above, documents concerning the reissue rates or refinance rates for title insurance premiums in the possession of TIRSA or forwarded to the Superintendent of Insurance for Rate approval.
The request of number (5) is not clear and cannot be granted as written.
The remaining items are protected from disclosure at this time as the relevance of a newly formed subcommittee to the issues in this lawsuit, or a present inquiry from the superintendent has not now been established.
[*3]
Finally, as to defendants' defense that the subpoena seeks documents encompassed by the deliberative process, TIRSA denies plaintiff access to the information requested in the subpoena under claim that it is privileged by the deliberative process. This defense presupposes that TIRSA is an agency as defined in section 86.3. of the Public Officers Law (FOIL), where information considered in the deliberation of policy are excepted from public disclosure. P.O.L. § 87.2. (g & h).
TIRSA is a licensed rating bureau for the formulation of policy forms, endorsement forms and premiums. The purpose of TIRSA is to gather industry-wide date so a true determination can be made as to whether title insurance rates are too low or too high and to assist the Insurance Department in setting rates. The members of TIRSA are all members of the title insurance industry which, although subject to State Department insurance regulations, are also plainly a presence in corporate America. See, Biffalo News v Buffalo Enterprise, 148 Misc. 2d 657 (Sup. Ct., Erie Co., 1990) rev'd other grounds 173 A.D.2d 43. Despite TIRSA's self-characterization as a "quasi governmental agency", it is the decision of this court that neither as defined in section 2313 of the Insurance Law nor section 86 of the Public Officers is TIRSA a governmental agency. TIRSA advises a government agency, but is not a government agency.
Finally, the documents turned over to NYSID are subject to public disclosure as they are relevant to a governmental decision-making process in setting rates and regulating and supervising the insurance industry. Washington Post v Ins. Dept., 61 N.Y.2d 557, 565 (1984). In addition, this information, turned over in support of the rates proposed by TIRSA, is also available pursuant to Ins. L § 2305 and there is no need for a subpoena or FOIL request.
The court has examined the remaining arguments by TIRSA and rejects them.
In summary, it is ORDERED that TIRSA serve a response to the documents demanded in number 2, 3, 4 and 7 of the subpoena within ten (10) business days of the date of this order.
Dated: April 15, 2004 
 J.S.C.
Decision Date: April 15, 2004