■ In the Matter of CORNELL ASSOCIATES REALTY, LTD. et al., Petitioners, v GAIL S. SHAFFER, as Secretary of the New York State Department of State, et al., Respondents. [619 NYS2d 822] —Crew III, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Secretary of State which found petitioners guilty of misconduct, and revoked or suspended petitioners' licenses to sell real estate.

In 1987, Cornell Development Corporation (hereinafter Cornell Development) began construction of a 151-unit townhouse development in the Town of Guilderland, Albany County. The sales of the units were handled by petitioner Cornell Associates Realty, Ltd. (hereinafter Cornell Realty); petitioner Peter Cornell, a licensed real estate broker, was a part owner and officer of both Cornell Development and Cornell Realty. The site coordinator for this project was petitioner Sara L. Socha, a licensed real estate broker, and petitioner Mary Pinckney, a licensed real estate salesperson, was employed by Cornell Realty as a sales representative.

In early 1988, respondent Domenica Pelkey became interested in purchasing a townhouse in the development and was introduced to Pinckney. As the lot that Pelkey originally was interested in obtaining was not yet available, Pelkey ultimately entered into a contract to purchase a townhouse to be constructed on a lot designated as 7090 Suzanne Lane. Shortly after this contract was executed in June 1988, Pelkey retained Pinckney as the listing agent for the sale of her present residence. Between June 1988 and August 1988, Pelkey tendered deposits totaling $15,502.60. According to Pelkey, she made it clear to Pinckney that she could not proceed with the purchase of the townhouse unless she was able to sell her present residence and Pinckney, in turn, assured her that if

things did not work out, she would be able to get her money back.

In August 1988, the lot in which Pelkey originally expressed interest, 7500 Antoinette Court, became available. At approximately the same time, James Fisch and Janet Fisch expressed interest in purchasing the lot covered by the Pelkey contract, 7090 Suzanne Lane. Seeing an opportunity to make two sales, Cornell had Pinckney contact Pelkey to suggest that she switch lots and Pelkey agreed. The parties dispute whether Pelkey's attorney was notified of this change and, further, whether Pelkey ever initialed this change in her contract.

The Fisches thereafter executed a contract for the purchase of 7090 Suzanne Lane and retained Pinckney as the listing agent for the sale of their present residence. According to the Fisches, although they declined to insert an attorney approval contingency into the contract, they did request that the purchase of 7090 Suzanne Lane be made contingent upon the sale of their present residence and received assurances from Pinckney and Socha that their deposit would be returned if their home did not sell. As to the requested contingency, the only language added to the contract was a provision inserted by Socha giving Cornell Realty the right to transfer the contract to another lot if the Fisches' residence did not sell by a certain date.

At some point in mid-1989 Pelkey, who had been unable to sell her home and apparently was experiencing personal family problems, decided that she could no longer go through with the purchase of the townhouse and contacted Pinckney regarding the return of her deposit. At a subsequent meeting between Pelkey, her son and William Benton, a shareholder and representative of Cornell Development, Benton refused to give Pelkey a complete refund, contending that significant costs had been incurred in the development of the Suzanne Lane property. In this regard, Benton disclaimed any knowledge that Pelkey's contract had been transferred to the property on Antoinette Court. In the interim, the Fisches also were unable to sell their home and they too requested a refund of their deposit, which they eventually received in November 1989.

Pelkey thereafter filed a complaint with respondent Department of State (hereinafter DOS), which led to a proceeding pursuant to Real Property Law § 441-c for restitution and revocation of petitioners' real estate licenses. Pinckney and Socha were charged with "demonstrat[ing] untrustworthiness

and/or incompetence" in violation of Real Property Law § 441-c and engaging in the unauthorized practice of law in violation of Judiciary Law § 484 with respect to the Pelkey and Fisch transactions. Cornell, in turn, was charged with, *inter alia,* "affirmatively approving the acts and misconduct" of Pinckney and Socha, and Cornell Realty was alleged to be vicariously liable for their actions as well.

At the conclusion of the administrative hearing that followed, the Administrative Law Judge (hereinafter ALJ) sustained the charges and recommended that the real estate licenses of Cornell, Cornell Realty and Pinckney be revoked and that Socha's real estate license be suspended for one year. The ALJ further provided that should Cornell and Cornell Realty ever reapply for licensure, such applications should not be considered until it was demonstrated that Pelkey's deposit, plus interest, had been refunded. Respondent Secretary of State concurred in the ALJ's determination, and this CPLR article 78 proceeding, transferred to this Court pursuant to CPLR 7804 (g), ensued.

Initially, we reject petitioners' assertion that the administrative complaint did not comport with due process requirements. Specifically, petitioners contend that the complaint failed to allege that Pinckney engaged in an improper dual agency by acting as an agent for both Cornell Realty in the sale of the townhouses and Pelkey and the Fisches in the sale of their respective residences. Although respondents candidly acknowledge that there was no express charge of improper dual agency set forth in the administrative complaint, "[t]he complaint described the substance of the acts complained of" *(Costanzo v Long Is. Bd. of Realtors,* 143 AD2d 625, 626) and, as such, sufficiently apprised Pinckney of the factual basis for this claim. Additionally, we note that the record plainly reveals that this particular theory was explored at the administrative hearing. Under these circumstances, we perceive no due process violation *(see, Matter of Grygiel v Shaffer,* 154 AD2d 763, 765; *compare, Matter of Janes v Department of State, Div. of Licensing Servs.,* 167 AD2d 960).[1]

Turning to the merits, it is well settled that an administrative determination will be upheld if supported by substantial evidence in the record as a whole, even if the record also contains evidence that would support a contrary conclusion *(see, Matter of Almo v Shaffer,* 149 AD2d 417; *see also, Matter of Grygiel v Shaffer, supra,* at 764). As a starting point, we reject petitioners' assertion that there is not substantial evidence to support the determination rendered with respect to

---

1. To the extent that any further discrepancies exist between the complaint and the findings made and the conclusions reached by the ALJ and the Secretary of State, we note that petitioners briefed only their objection to the dual agency theory and, in any event, we are of the view that the complaint as a whole provided sufficient notice with respect to each of the sustained charges to satisfy due process.

Pinckney and Socha. Based upon our review of the record as a whole, we conclude that there is sufficient evidence to support each of the charges sustained against them, and petitioners' arguments to the contrary have been examined and found to be lacking in merit.

We reach a different conclusion, however, with respect to the finding that Cornell and Cornell Realty were liable based upon the demonstrated misconduct of Pinckney and Socha. Real Property Law § 442-c does not permit the revocation or suspension of a broker-employer's license based upon the misconduct of a salesperson or employee unless, *inter alia*, the broker had "actual knowledge" of the employee's misconduct (Real Property Law § 442-c). This rule applies with equal force to corporate brokers *(see generally, Matter of Roberts Real Estate v New York State Dept. of State, Div. of Licensing Servs.,* 80 NY2d 116).

Although Cornell was involved in various aspects of the Pelkey and Fisch transactions, there is no indication that he or any other officer of Cornell Realty was aware of the respective representations of Pinckney and Socha regarding the refundability of the subject deposits. Additionally, even accepting that the listing agreements executed by Pelkey and the Fisches provided Cornell and/or Cornell Realty with actual knowledge that Pinckney was acting as a dual agent, there is no indication that either was aware that Pinckney failed to make the requisite disclosures to her clients. Finally, as to the language inserted by Socha in the Fisch contact, although Cornell was asked at the administrative hearing whether he had reviewed this document and responded in the affirmative, the record does not definitively establish when such review occurred. In short, the record does not support the finding that Cornell and/or Cornell Realty had actual knowledge of the misconduct of Pinckney and Socha. Nor are we persuaded that Cornell may be held personally liable for failing to return Pelkey's deposit. It appears from the record that Pelkey's deposit was retained by Cornell Development, which is not a party to this proceeding, and contrary to respondents' assertion, the record before us does not contain sufficient facts to permit us to pierce Cornell Development's corporate veil *(see, New York Assn. for Retarded Children v Keator,* 199 AD2d 921, 923) and hold Cornell personally liable for the moneys paid by Pelkey. Accordingly the determination, insofar as it imposes liability upon Cornell and Cornell Realty, cannot stand.

Petitioners' remaining contentions, including the assertion

that the penalties imposed with respect to Pinckney and Socha are so disproportionate to the underlying offenses as to be shocking to this Court's sense of fairness, have been examined and found to be lacking in merit.[2]

Mercure, J. P., White and Casey, JJ., concur. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as found that petitioner Peter Cornell and petitioner Cornell Associates Realty, Ltd. engaged in fraudulent practices and demonstrated untrustworthiness and incompetence in the practice of their profession and revoked their respective licenses to practice their profession; petition granted to said extent; and, as so modified, confirmed.

---

2. As to Cornell and Cornell Realty, inasmuch as we have annulled that portion of the determination relating to them, we need not consider the propriety of the penalty imposed except to note that we are of the view that respondents exceeded their authority in requiring that Cornell and/or Cornell Realty refund Pelkey's deposit, plus interest *(see,* Real Property Law § 441-c [listing available sanctions]). In this regard, we find that the cases relied upon by respondents are distinguishable *(see, e.g., Matter of Zelik v Secretary of State of State of N. Y.,* 168 AD2d 215 [requiring restitution of commission before reapplying for licensure]; *Matter of Edelstein v Department of State,* 16 AD2d 764 [same]), and the directive that Cornell and/or Cornell Realty pay interest upon the deposit plainly was improper, as respondents do not have the power to award damages *(see, Matter of Donati v Shaffer,* 187 AD2d 426, 427).