Matter of Mario Enters., Inc. v New York State Liq. Auth. (2020 NY Slip Op 08146)





Matter of Mario Enters., Inc. v New York State Liq. Auth.


2020 NY Slip Op 08146


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

530512

[*1]In the Matter of Mario Enterprises, Inc., Petitioner,
v
New York State Liquor Authority, Respondent.

Calendar Date: November 23, 2020

Before: Garry, P.J., Egan Jr., Mulvey and Colangelo, JJ.


Pinsky Law Group, PLLC, Syracuse (Bradley M. Pinsky of counsel), for petitioner.
Gary Meyerhoff, New York State Liqour Authority, Albany (Mark D. Frering of counsel), for respondent.



Mulvey, J.
Proceeding pursuant to CPLR article 78 (transferred to
this Court by order of the Supreme Court, entered in Cortland County) to review a determination of respondent, among other things, revoking petitioner's liquor license.
Petitioner held a license authorizing the sale of liquor, wine and beer on its premises — the Stone Lounge — in the City of Cortland, Cortland County. During September and October 2017, the Cortland Police Department (hereinafter CPD) issued nearly 115 tickets to patrons of the Stone Lounge for possession of an alcoholic beverage by someone under the age of 21 and, as part of a sting operation, petitioner granted entry and served alcohol to two underage agents of CPD. Based upon the large number of tickets issued by CPD, the Division of Alcoholic and Beverage Control charged petitioner with 103 charges of misconduct. Specifically, petitioner was charged with inadequate supervision (see 9 NYCRR 48.2, 53.1 [f]), becoming a focal point of police attention (see 9 NYCRR 53.1 [q]), pattern of misconduct (see Alcoholic Beverage Control Law § 118 [1], [3]) and 100 charges of unlawfully providing alcohol to an individual under the age of 21 (see Alcoholic Beverage Control Law § 65 [1]). Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained 55 of the 103 charges. Upon administrative review, respondent sustained 56 charges against petitioner — including one that was not sustained by the ALJ — dismissed the remainder, revoked petitioner's liquor license and imposed a $1,000 bond forfeiture. Petitioner commenced this CPLR article 78 proceeding, seeking a review of respondent's determination, which was transferred to this Court.[FN1]
Substantial evidence supports the sustained charges alleging that petitioner provided alcoholic beverages to individuals under 21 years of age. Alcoholic Beverage Control Law § 65 specifies that alcoholic beverages may not be sold to "[a]ny person, actually or apparently, under the age of [21] years" (Alcoholic Beverage Control Law § 65 [1]). "To establish a violation, respondent must prove that the proscribed conduct was open, observable and of such nature that its continuance could, by the exercise of reasonable diligence, have been prevented" (Matter of Today's Lounge of Oneonta, Inc. v New York State Liq. Auth., 103 AD3d 1082, 1083 [2013] [internal quotation marks and citations omitted]). "Hearsay evidence is admissible in administrative hearings and may, under appropriate circumstances, form the sole basis of an agency's determination, unless it is seriously controverted" (Matter of JMH, Inc. v New York State Liq. Auth., 61 AD3d 1260, 1261 [2009] [internal quotation marks and citations omitted]; see Matter of Willis v New York State Liq. Auth., 118 AD3d 1013, 1014 [2014]; Matter of CafÉ La China Corp. v New York State Liq. Auth., 43 AD3d 280, 281 [2007]). "[I]t shall be an affirmative defense [to a violation of Alcoholic Beverage Control Law § 65 (1)] that such person had produced [*2]a photographic identification card apparently issued by a governmental entity and that the alcoholic beverage had been sold, delivered or given to such person in reasonable reliance upon such identification" (Alcoholic Beverage Control Law § 65 [6] [a]). Petitioner bears the burden of establishing this affirmative defense (see Matter of Tap Rest. Corp. v New York State Div. of Alcoholic Beverage & Control, N.Y. State Liq. Auth., 214 AD2d 880, 882 [1995]; see generally Matter of Sonbyrne Sales v New York State Liq. Auth., 192 AD2d 1118, 1118-1119 [1993], lv denied 82 NY2d 655 [1993]).
Each sustained charge for a sale to an underage person was supported by, at a minimum, a sworn statement by the officer who issued the appearance ticket. Each statement averred that the officer had observed the individual consuming an alcoholic beverage within the Stone Lounge and set forth the patron's age and date of birth, which demonstrated that the patron was under the age of 21 at the time the ticket was issued. In most instances, this affidavit was accompanied by additional corroborating evidence including copies of the tickets that had been issued to the patrons, which specified their age, and officers' testimony regarding admissions made by the underage patrons. Additionally, petitioner produced statements from most of the patrons stating that they were underage at the time, as well as photocopies of their valid identifications verifying their ages. This evidence supports the conclusion that each patron was underage when served alcoholic beverages at the Stone Lounge and, therefore, petitioner violated Alcoholic Beverage Control Law § 65 with regard to each charge (see Matter of Today's Lounge of Oneonta, Inc. v New York State Liq. Auth., 103 AD3d at 1083-1084; Matter of Surf City Enters. of Syracuse, Inc. v New York State Liq. Auth., 96 AD3d 1458, 1458 [2012]; compare Matter of 25-24 CafÉ Concerto Ltd. v New York State Liq. Auth., 65 AD3d 260, 266-267 [2009]; Matter of Alegre Deli v New York State Liq. Auth., 298 AD2d 581, 582 [2002]).
We will not disturb respondent's conclusion that petitioner failed to establish the reasonable reliance affirmative defense as to the challenged charges. Taking into consideration that CPD lost or destroyed some of the fake identifications used by the charged patrons, thereby depriving petitioner of evidence to support its defense, the ALJ and respondent afforded petitioner an inference that if documents taken by CPD that were now unavailable had been produced, they would have appeared to be governmentally issued and appropriate for petitioner to rely upon. However, it was reasonable for respondent to limit that inference and not apply it where the identification documents were unavailable for reasons unrelated to CPD's actions, such as the patron losing or destroying it prior to the hearing. Petitioner did not meet its burden through its production of subpoenas it issued to patrons, pictures taken from social media [*3]to show that the identification produced by patrons looked like them, or screen grabs from petitioner's scanner indicating that the patrons produced identification stating they were over 21, as this evidence provided no information with regard to the false identifications purportedly used by the patrons (see Alcoholic Beverage Control Law § 65 [6] [a]; cf. Matter of Tap Rest. Corp. v New York State Div. of Alcoholic Beverage & Control, N.Y. State Liq. Auth., 214 AD2d at 882). Petitioner submitted statements from numerous patrons maintaining that they had utilized false identification to access the Stone Lounge on the nights in question. These statements largely mirrored one another and maintained that the false identification looked "very much like" the patron, bore a "reasonable resemblance" to the patron or had his or her own photograph. Such statements do not "constitute the functional equivalent of a statement under oath," as none contained a notice pursuant to Penal Law § 210.45 (Matter of B & M Nachos Corp. v New York State Liq. Auth., 147 AD3d 564, 564 [2017]). Nevertheless, these self-serving statements, which appear to have been provided to the patrons by petitioner or its counsel, do not provide any detail as to the actual quality of these false identifications nor do they provide detail as to the actual photographs contained thereon.
As to those charges challenged herein where the false identification used by the patron could be compared to the actual identification of that person, petitioner still failed to establish entitlement to the affirmative defense. For example, in some instances the photographs were noticeably different, and others contained discrepancies in details such as height. Considering that the ALJ and respondent dismissed numerous charges based on the reasonable reliance affirmative defense, we cannot say that respondent abused its discretion in determining that respondent failed to meet its burden of establishing that defense as to the sustained charges (see Matter of Dark Horse II v New York State Liq. Auth., 238 AD2d 699, 700 [1997]; Matter of Dark Horse Tavern v New York State Liq. Auth., 232 AD2d 947, 948 [1996]).
The two charges arising from the sting operation are supported by substantial evidence. The record contains sworn statements from the underage agents, as well as copies of their actual identification — proving that they were under 21 years of age — and copies of the false identification used to gain admission, which contained photographs that were not similar to those on the real identification, thereby defeating the reasonable reliance affirmative defense. The actions of CPD and its agents did not constitute entrapment, as it did not encourage illegal conduct but "merely afforded the petitioner an opportunity to commit the offense" (Matter of L & R Wines & Liqs. v New York State Liq. Auth., 174 AD2d 570, 571 [1991]; see Penal Law § 40.05; Matter of Cantina El Bukis Corp. v New York State Liq[*4]. Auth., 46 AD3d 557, 557-558 [2007], lv denied 11 NY3d 705 [2008]; Matter of Kaminski v Casale, 244 AD2d 555, 555 [1997]). The fact that CPD had arrested approximately 100 underage patrons in the Stone Lounge in the two months preceding the sting operation support an inference that petitioner was predisposed to sell alcohol to minors even before CPD's agents arrived.
The charges alleging inadequate supervision (charge 1), focal point of police attention (charge 2) and pattern of misconduct (charge 3) are supported by substantial evidence. As to charge 1, a licensee may have its license revoked for a "[f]ailure or refusal . . . to comply with any provision of the Alcoholic Beverage Control Law or any rule or regulation of [respondent]" (9 NYCRR 53.1 [f]). One such regulation specifies that a licensee has an obligation to "insure that a high degree of supervision is exercised over the conduct of the licensed establishment at all times" and that "[e]ach such licensee will be held strictly accountable for all violations that occur" (9 NYCRR 48.2). As to charge 2, a licensee may have its license revoked "[w]hen any . . . misconduct occurs in the licensed premises [and] . . . results in the licensed premises becoming a focal point of police attention" (9 NYCRR 53.1 [q]). Finally, as to charge 3, a licensee may have its license revoked for cause when there exists "a sustained and continuing pattern of noise, disturbance, misconduct, or disorder on or about the licensed premises . . . which adversely affects the health, welfare or safety of the inhabitants of the area" (Alcoholic Beverage Control Law § 118 [3] [a]).
Testimony from CPD officers indicated that the Stone Lounge was known in this college city as "the freshman bar," was popular with underage students and, in September and October 2017, CPD had issued a total of 200 underage drinking tickets in the city, 115 of which were from the Stone Lounge. One officer testified regarding a conversation that he had with petitioner's manager wherein they discussed the problem with the disproportionate number of patrons with out-of-state identifications being admitted into the bar. Another officer testified that he had a conversation with the doorman of the Stone Lounge wherein that night 272 total individuals had been scanned into the bar and roughly 240 had utilized out-of-state identifications to do so, despite only approximately 6% of the students from the local college being residents of other states. Testimony established that CPD had foot patrols visiting the downtown bars, including the Stone Lounge, every Friday and Saturday.
The disproportionate number of underage individuals admitted into the Stone Lounge in the months of September and October 2017 supports the determination that petitioner did not exercise the "high degree of supervision" required over the Stone Lounge (9 NYCRR 48.2). This failure by petitioner, and the misconduct resulting therefrom, caused the Stone Lounge to become[*5]"a focal point of police attention" as evidenced by the fact that CPD was required to expend its time and resources (9 NYCRR 53.1 [q]), even if CPD also regularly patrolled other bars in the downtown area. As evidenced by the 100 separate violations of Alcoholic Beverage Control Law § 65 (1), this failure on the part of petitioner has resulted in a sustained pattern of misconduct, and the effects of the related underage drinking may adversely affect the health and welfare of the community (see Alcoholic Beverage Control Law § 118 [3] [a]). As to petitioner's specific contention that respondent cannot require the request of a second form of identification when presented with an out-of-state identification, the ALJ did not impose such a requirement and only suggested that this was an option, as a way for petitioner to have addressed the high number of underage patrons using fake out-of-state identification to gain admission to the establishment. Additionally, petitioner's own admission policy provides that if employees have "any doubts as to the validity of the identification, such as in some instances where the patron presents an out of state identification, a second form of identification may be requested," and, if such is not provided, the patron "should not be admitted." Thus, the ALJ did not exceed his authority or improperly impose a requirement on petitioner (compare Matter of Vitagliano v State of N.Y. Liq. Auth., 174 AD2d 624, 625-626 [1991]). Accordingly, the first three charges were supported by substantial evidence (see Matter of SCE Group Inc. v New York State Liq. Auth., 159 AD3d 519, 520 [2018]; Matter of MJS Sports Bar & Grill, Inc. v New York State Liq. Auth. Div. of Alcoholic Beverage Control, 129 AD3d 1368, 1370 [2015]).
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: We reject respondent's assertion that this proceeding is academic due to petitioner's failure to challenge 11 of the sustained charges. Although respondent contends that those 11 charges alone were sufficient to support revocation of petitioner's license, if this Court were to determine that any of the 45 challenged charges are unsupported by substantial evidence, the proper remedy would be to annul those charges and remit the matter for a redetermination of the proper penalty (see Matter of Kinnie v New York State Liq. Auth., 64 AD3d 1152, 1153 [2009]; Matter of Mupic Liqs. v New York State Liq. Auth., 212 AD2d 793, 794 [1995]). Thus, the proceeding is not academic.