Matter of ExceedLLC, LLC v Department of State Div. of Licensing Servs. (2024 NY Slip Op 06633)

Matter of ExceedLLC, LLC v Department of State Div. of Licensing Servs.

2024 NY Slip Op 06633

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

CV-23-0923
[*1]In the Matter of ExceedLLC, LLC, et al., Petitioners,
v
Department of State Division of Licensing Services, Respondent.

Calendar Date:November 18, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Brewer, Attorneys & Counselors, New York City (Malvina Palloj of counsel), for petitioners.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondent.

Egan Jr., J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Special Deputy Secretary of State revoking, among other things, the real estate broker's license of petitioner ExceedLLC, LLC.
During the relevant period, petitioners ExceedLLC, LLC and Exceed Real Estate, LLC (hereinafter collectively referred to as Exceed), as well as petitioner Realty Holdings USA, LLC, were licensed by the Department of State (hereinafter DOS) to act as real estate brokerages (see Real Property Law §§ 440-a, 441 [1]). Petitioner Anthony T. Laudonia was an owner and officer of all three companies and the representative broker for them. Exceed operated a "Smart Homeowners Program" and, until early 2016, subcontracted with marketing firms to recruit qualified homeowners for the program by setting up kiosks at public locations such as supermarkets or by soliciting door-to-door. The homeowners who enrolled in the program would receive checks or gift cards from Exceed in an amount calculated using the value of their home, running from $300 for homes valued between $100,000 and $149,999 and $10,000 for homes valued at $5,000,000 or more. The homeowners would, in return, be required to use a cooperating real estate broker from a list provided by Exceed if they ever chose to place their home on the market. If the homeowners used one of the participating brokers and the home was sold, the broker would pay Exceed 35% of its commission at closing. If the homeowners did not use a participating broker, however, the agreement specified that they would have to terminate the agreement by directly paying 1.2% of the fair market value of their home to Exceed or could otherwise be held liable to Exceed for that amount in damages for breach of contract. The agreement also made clear that, while the homeowners were not obliged to sell their home, its terms would survive their death and remain "binding on [their] heirs or other successors-in-interest" whenever those individuals eventually placed the home on the market.
After a complaint was made by an individual who reported that his elderly neighbor had received a letter and $200 check from Exceed and feared that it was a scam, respondent opened an investigation into the program in February 2017. The results of that investigation prompted DOS to commence an administrative proceeding in September 2019 that sought, among other things, the revocation of the real estate broker's licenses issued to petitioners. The matter proceeded to a hearing, after which an Administrative Law Judge (hereinafter ALJ) issued a decision in April 2022. The ALJ found that Exceed and Laudonia had violated the Real Property Law and implementing regulations by failing to disclose pertinent information about their identities in web-based advertising, by failing to immediately provide a copy of the program agreement to enrollees and by using dishonest or misleading advertising [*2]about the terms of the program, all of which was improper by itself but also reflected untrustworthiness or incompetency to act as a real estate broker that warranted a penalty. The ALJ accordingly imposed the penalty of license revocation upon Exceed and fined Laudonia $2,000. The ALJ dismissed the charges against Realty Holdings given the lack of evidence that it had been involved in operating the program.
Following cross-appeals, the Special Deputy Secretary of State issued an October 2022 determination in which he largely agreed with the ALJ but further found that Exceed and Laudonia had used unlicensed subcontractors to conduct real estate brokerage activity in violation of Real Property Law § 440-a. The Deputy Secretary upheld the penalties imposed by the ALJ and, additionally, directed that the real estate broker's license for Realty Holding be suspended and then revoked unless it designated a new representative broker because Laudonia was an unacceptable one. This CPLR article 78 proceeding to challenge the Deputy Secretary's determination ensued, and was transferred to this Court pursuant to CPLR 7804 (g).
We confirm. Where it is made following an evidentiary hearing, "an administrative determination will be upheld if supported by substantial evidence in the record as a whole, even if the record also contains evidence that would support a contrary conclusion" (Matter of Cornell Assoc. Realty v Shaffer, 210 AD2d 537, 539 [3d Dept 1994], appeal dismissed & lv denied 85 NY2d 1021 [1995]; see Matter of Shanahan v Justice Ctr. for the Protection of People with Special Needs, 198 AD3d 1157, 1158 [3d Dept 2021]). "Of particular relevance here, hearsay is admissible as competent evidence in an administrative proceeding, and if sufficiently relevant and probative may constitute substantial evidence even if contradicted by live testimony on credibility grounds, so long as the hearsay is not otherwise seriously controverted" (Matter of Autz v New York State Justice Ctr. for the Protection of People with Special Needs, 215 AD3d 1086, 1087 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 905 [2023]; see Matter of Mario Enters., Inc. v New York State Liq. Auth., 189 AD3d 2034, 2035 [3d Dept 2020]).
The administrative hearing here included the testimony of a DOS employee who supervised the investigator looking into the complaint against petitioners and described what the investigator uncovered, as well as Laudonia, and those witnesses gave essentially consistent descriptions of how the program was structured and marketed to homeowners. There was also documentary evidence that included the investigator's report, printouts of the program's website and marketing materials and copies of the pertinent agreements demonstrating the terms of the program and how much potential enrollees were told about it. The hearing testimony and website printouts reflected, and the Deputy Secretary found, that the website failed to provide [*3]items like the contact information and licensing details of Exceed and Laudonia that had to be disclosed under 19 NYCRR 175.25 (c). The information on the website and in other marketing materials hyping the program were also notably misleading as to what homeowners were getting themselves into if they enrolled in the program. Homeowners were informed that they owed Exceed nothing if they sold their home using a participating broker or never sold at all, for instance, but they were not advised that Exceed had the right to sue them for breach of contract and obtain 1.2% of the fair market value of their homes in damages if they elected to sell their homes without using a participating broker.[FN1] Moreover, while homeowners were assured that they had "no obligation" to sell their homes under the program, they were not alerted to the fact that the agreement would outlive them and bind their successors in interest to use a participating broker when selling or otherwise pay Exceed. The Deputy Secretary further found that these omissions constituted "dishonest or misleading advertising" by a licensee, which is prohibited (Real Property Law § 441-c [1] [a]).[FN2]
Moreover, the Deputy Secretary noted the evidence demonstrating how the enrollment process itself ran afoul of the Real Property Law and implementing regulations in several respects. Real Property Law § 440-a required that licensed real estate brokers be used to recruit homeowners for the program because the program's primary purpose was to ensure that future sales of residential real property would be handled by participating brokers, but the testimony reflected that Exceed violated that requirement and subcontracted the work to unlicensed marketing representatives (see e.g. People v Sickinger, 79 Misc 2d 572, 574-575 [Crim Ct, NY County 1974]). The hearing testimony also showed that, while homeowners who entered into an enrollment agreement with Exceed were able to access a copy of that agreement online if they chose to do so, homeowners enrolled by entering a few details on an iPad and initialing the agreement electronically and were not "immediately deliver[ed] a copy of" the agreement as required (19 NYCRR 175.12).
Assuming, without deciding, that there was any view of the foregoing proof which could support a different result, we are nevertheless satisfied that it constituted substantial evidence supporting the findings of the Deputy Secretary that Exceed and Laudonia violated their obligations under the Real Property Law in numerous respects. In view of the nature and sheer volume of those violations, substantial evidence further supports the Deputy Secretary's further finding that they had "demonstrated [their] untrustworthiness or incompetency to act as a real estate broker" (Real Property Law § 441-c [1] [a]; see Matter of Gold v Lomenzo, 29 NY2d 468, 476-477 [1972]).
Petitioners' remaining challenges, including those to the quality of the proof adduced at the hearing and the purported necessity [*4]for injury to a program participant in order to establish a violation of their licensing obligations, were not preserved via specific objection at the administrative level and cannot be considered (see Matter of Khan v New York State Dept. of Health, 96 NY2d 879, 880 [2001]; Matter of Autz v New York State Justice Ctr. for the Protection of People with Special Needs, 215 AD3d at 1089-1090).
Garry, P.J., Clark, Pritzker and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: This liability was much greater than the amount of money homeowners initially received via gift card or check. By way of example, the owner of a home worth $100,000 at the time they enrolled in the program would receive gift cards or checks from Exceed in the amount of $300. If they failed to use a participating broker when they put that home on the market in the future, however, they would be liable to Exceed for 1.2% of that home's fair market value. The homeowner would therefore be liable to Exceed for $1,200 if — and it is a big if — the fair market value of the home had not increased following the execution of the agreement.

Footnote 2: Petitioners complain that these omissions did not constitute a deceptive business act or practice prohibited by General Business Law § 349 but, while the ALJ referenced that statute, the Deputy Secretary only determined that Exceed and Laudonia violated Real Property Law § 441-c. We accordingly need not consider whether their conduct also fell within the ambit of General Business Law § 349.